J-S64041-18

2018 PA Super 341

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
VAMSIDHAR VURIMINDI, :
:
Appellant. : No. 2140 EDA 2017

Appeal from the Judgment of Sentence, April 25, 2014,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0008022-2012.

BEFORE: BOWES, J., OLSON, J., and KUNSELMAN, J.

OPINION PER CURIAM: **FILED DECEMBER 14, 2018**

Vamsidhar Vurimindi appeals from the judgment of sentence entered on April 25, 2014 on two counts of stalking and one count of disorderly conduct.[1] Based on Vurimindi's continuous and deliberate failure to comply with the Pennsylvania Rules of Appellate Procedure, we dismiss this appeal.

In September 2010, one of Vurimindi's neighbors filed a private criminal complaint against him, charging him with harassment and stalking. The neighbor lived on the same floor as Vurimindi in Hoopskirt Factory Lofts, a condominium building in Philadelphia. The case was referred to the Philadelphia Municipal Court's arbitration program under Philadelphia

---

[1] 18 Pa.C.S.A. § 2709.1(a)(1) and 18 Pa.C.S.A. § 5503(a)(4), respectively.

Municipal Court Rule of Criminal Procedure 850.  Following arbitration of the case, the municipal court judge issued two stay-away orders against Vurimindi.[2]  After Vurimindi continued to ignore the stay-away orders, the police arrested him on February 4, 2012, on new disorderly conduct charges involving the same victim.[3]  On June 13, 2012, the Commonwealth amended the charges, and the case was assigned a Common Pleas number, CP 51-CR-0008022-2012.   The new charges included one count of disorderly conduct and two charges of stalking, one for the same victim as the earlier case, and another stalking charge for a second victim, another female neighbor who also lived on his floor.

The trial court articulated the specific facts of Vurimindi's stalking in a detailed opinion.  Trial Court Opinion, filed September 17, 2017, at 3-10.  The full factual history is not necessary for purposes of our disposition.  Notably, Vurimindi's egregious and bizarre behavior forced his first victim to install a panic-button alarm system that connected directly to the local police and to consider hiring a body guard.  *Id.* at 5. That victim completed her residency

---

[2] It appears the first stay away order was a mutual one, requiring both parties to avoid each other.

[3] The first victim testified about all of Vurimindi's actions, the original incidents starting in 2010 and the later incident resulting in the new charges in February 2012. N.T. 2/7/14 at 41.  The date of the offenses for which he was convicted is listed on the trial disposition form as February 4, 2012.  Thus, contrary to Vurimindi's suggestion, the trial in this matter was not held and he was not convicted on the same actions complained of in municipal court, but rather on new charges resulting from his actions after the arbitration.  As such, there was no violation of Phil. M.C.R. Crim. P. 860 or a double jeopardy violation regarding the earlier 2010 charges.

for medical school, found employment out of state and relocated. *Id.* at 7. Vurimindi's actions forced the other victim to sell her condominium and move twice to get away from Vurimindi. *Id.* at 10. Both women were terrified of Vurimindi. *Id.* at 7, 10.

Although he was arrested in 2012 for the charges relevant to this case, the trial on these charges was delayed for nearly two years, pending multiple Mental Health Competency Evaluations which were conducted from February 2012 through July 2013. For many months, the court-appointed psychologist determined Vurimindi was not competent to stand trial.

Ultimately, Vurimindi submitted his own expert report that he was competent, and he waived his right to a jury trial.[4] On February 7, 2014, the court held a one-day bench trial on the 2012 charges. The trial court convicted Vurimindi on two counts of stalking (M1) and one count of disorderly conduct (M3). On April 24, 2014, the trial court sentenced Vurimindi to two and one-half to five years of incarceration, followed by five years of probation.

Vurimindi filed a *pro se* post-sentence motion, dated April 25, 2014, which was received on May 1, 2014, but incorrectly docketed as *pro se* correspondence. No action was taken on this motion. The next day, on April 26, 2104, Vurimindi filed a *pro se* PCRA petition. On May 14, 2014, he requested counsel.

_____

[4] Vurimindi filed a motion for a speedy trial on August 6, 2013. Therein he noted that he submitted a report from his consulting psychiatrist, Dr. Smith, to the court on June 24, 2013. The written jury trial waiver colloquy was dated and accepted by the trial court on November 12, 2013.

- 3 -

In January 2016, Attorney David Rubenstein was appointed to represent Vurimindi in his PCRA action. On May 7, 2016, Attorney Rubenstein filed an amended PCRA Petition and supporting brief on Vurimindi's behalf, seeking among other relief, reinstatement of Vurimindi's direct appeal rights.

On May 12, 2016, Vurimindi requested that Attorney Rubenstein be removed as his counsel because counsel refused to raise the 484 issues Vurimindi wished to raise in his PCRA Petition. Attorney Rubenstein also requested permission to withdraw as counsel, citing Vurimindi's request for his removal and his threats to sue him in civil court.[5] The court conducted a *Grazier*[6] hearing on September 1, 2016, and granted Vurimindi's request to proceed *pro se* with his PCRA Petition.

The PCRA court also scheduled a hearing on Vurimindi's PCRA Petition for February 23, 2017. Vurimindi filed a 500-page memorandum of law in support of his PCRA Petition dated January 25, 2017. Then, on February 20, 2017, he filed a 289-page supplemental memorandum of law in support of the same PCRA Petition.

The PCRA hearing occurred on May 2, 2017 and June 27, 2017. At the request of the trial judge, the District Attorney prepared a letter prior to the second day of the hearing. The letter explained the procedural oversight regarding the docketing of Vurimindi's original post-sentence motion, and

---

[5] Vurimindi filed civil lawsuits against many people involved in this litigation.

[6] **See *Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

requested the PCRA court to reinstate Vurimindi's direct appeal rights. On June 27, 2017, the PCRA court ordered that Vurimindi's post-sentence motions be deemed denied by operation of law and reinstated his direct appeal rights. The PCRA court specifically determined that this case was not appropriate for unitary review and directed Mr. Vurimindi **not** to raise any issues concerning the ineffectiveness assistance of counsel in his direct appeal. T.C.O., 9/19/17, at 15. The court discussed the appeal process with Vurimindi at this hearing and specifically warned him against filing too many issues on appeal. **Id.**

Vurimindi timely filed his Notice of Appeal and a Rule 1925(b) statement on July 25, 2017. In this 53-page statement, he raised over 290 issues: 132 numbered issues with multiple sub-issues. He also filed several motions requesting to represent himself in this direct appeal.[7] The trial court held a second **Grazier** hearing on August 29, 2017.[8] After granting Vurimindi's

---

[7] Initially, he requested back-up counsel, but the request for hybrid representation was denied. N.T., 6/27/17, at 37-38.

[8] The first **Grazier** hearing allowed Vurimindi to proceed *pro se* with his PCRA Petition. The second **Grazier** hearing allowed him to proceed *pro se* with his direct appeal. By per curiam order from a motions judge, this Court indicated on August 21, 2017 that a **Grazier** hearing was not necessary for this appeal because Appellant was already proceeding *pro se*. However, the order from this Court did not reach the trial court, which conducted the already scheduled **Grazier** hearing on August 29, 2017. The trial judge had scheduled the second **Grazier** hearing when it reinstated Vurimindi's direct appeal rights on June 27, 2017, and Vurimindi requested to represent himself.

In accordance with Pennsylvania Rule of Criminal Procedure 121 the court held a colloquy and determined that Vurimindi's request to waive his right to counsel and to represent himself on appeal was knowing, voluntary

request to represent himself, that same day, the court directed him to file a new **concise** statement of errors complained of on appeal in accordance with Rule 1925(b)(1) within **thirty (30) days**.[9]   Although he was told to reduce the number of errors he complained of in his original statement and to narrow the issues for meaningful appellate review, on September 6, 2017, Vurimindi instead filed a supplemental concise statement that added 8 additional issues to the 53-page statement he filed on July 25, 2017.

We note that Vurimindi has filed so many motions, requests and briefs with the trial court that the record for this one-day waiver trial consists of nearly 3,400 total pages.  These documents include the lengthy documents previously mentioned, together with Vurimindi's repetitive requests to add what he deemed to be "exculpatory evidence" to the record[10] or to correct

_____

and intelligent.  We note that a ***Grazier*** hearing was appropriate under ***Commonwealth v. Figueroa***, 29 A.3d 1177 (Pa. Super. 2011) (holding that an on-the-record colloquy is necessary to ensure that a defendant/PCRA Petitioner understands his right to counsel and to confirm his right and desire to proceed *pro se*).

[9] The court sent Vurimindi a letter to this effect, in addition to the court order, underlining and bolding the word "concise" and the time limit of "thirty (30) days" for extra emphasis.

[10] Vurimindi requested many times to supplement the record from the trial court with over 220 hours of motion-detected video recordings he made of the hallway in his building from June 2010 through April 2012.  The trial court told him that this evidence would not be considered by the appellate court because it was not part of the record from the trial.  N.T., 6/27/17, at 31.  See full discussion of this subject at ***Id***. 30-38.  To the extent Vurimindi believes this evidence should have been used at trial, he can raise that claim in a PCRA Petition; but we cannot review it at this point.  ***See Commonwealth v.***

what he perceived were mistakes in the trial transcripts, in addition to several petitions for adverse orders, motions to recuse the trial court, motions to proceed *pro se*, and many letters he sent to the judge, which were docketed as *pro se* correspondence.

Vurimindi also requested transcripts from each and every time he appeared in court or presented a motion; he believed this was necessary for the record on appeal to be complete. It is unknown whether a "transcript" of every proceeding exists. Typically, transcripts are not available or necessary for arguments, but rather, are a means of preserving sworn testimony at hearings. It appears no transcript of the sentencing hearing on April 24, 2017 was submitted with the trial court record to this Court. However, based on the procedural defects of Vurimindi's 1925(b) statement and his appellate brief, the missing transcripts are unnecessary for appellate review in this matter.

After receiving Vurimindi's second 1925(b) statement on September 6, 2017, the trial court issued its Opinion on September 19, 2017. The trial court concluded that Vurimindi submitted his voluminous 1925(b) statement "in bad

---

**Preston**, 904 A.2d 1, 6 (Pa. Super. 2006) (recognizing that Pennsylvania law is well-settled that matters not of record cannot be considered on appeal). We note that reviewing that many hours of video would take almost 6 full work-weeks at 40 hours per week. The courts do not have the ability to do this, nor is this appropriate for meaningful appellate review.

faith to circumvent the court system" and recommended that "his issues be waived and his appeal quashed." T.C.O., 9/19/17, at 2.

Apparently concerned about the possibility of his appeal being dismissed, **after** the trial court issued its opinion, Vurimindi filed a motion to amend his 1925 (b) statement on September 25, 2017, followed by an amended 1925(b) statement on September 29, 2017.[11] This Amended Statement was not considered by the trial court. Shortly thereafter, Vurimindi began filing numerous lengthy motions with this Court, including a 59-page motion for a new trial (10/3/17) and a 31-page motion for reconsideration of the trial judge's recommendation to quash the appeal (10/20/17).

After several requests for more time, Vurimindi ultimately filed his first appellate brief with this Court in April 2018. His first brief was over 300 pages. Upon a motion of the Commonwealth, this Court struck the brief as non-conforming, and gave Vurimindi a second chance to file a brief that conformed to Chapter 21 of the Pennsylvania Rules of Appellate Procedure. Despite being told to narrow his issues, Vurimindi's second brief, filed on July 30, 2018, was still over 140 pages. It contained 32 pages of citations; it listed nearly 400 cases and 100 statutes.

In his brief, Vurimindi attacked everything he could possibly think of that in any way related to this case. He challenged his competency and ability to waive his right to a jury trial. See Appellant's Brief, at 21-25. He attacked

---

[11] No action was taken on the motion, but Vurimindi filed his amended 1925(b) statement anyway.

J-S64041-18

the judges associated with his case. *Id*. at 10-16, 25-38. He attacked the district attorney. *Id*. at 38-51. He attacked the process at the Municipal Court and the Court of Common Pleas. *Id*. at 52-58. He repeatedly attacked his trial counsel (6 different lawyers), despite being told his case was not appropriate for unitary review (i.e. his ineffective assistance of counsel claims had to wait for collateral review under the Post-Conviction Relief Act). *Id.* at 8-10, 58-63. He attacked the statutes under which he was convicted as being unconstitutional. *Id*. at 63-79. He attacked the verdict. *Id.* at 79-92. He attacked his sentence. *Id.* at 92-100. Finally, he attacked this Court's ability to make a meaningful review of his case. *Id*. at 100-108.[12]

After he received the Commonwealth's Brief, which requested that his appeal be dismissed for failure to follow the Rules of Appellate Procedure, Vurimindi filed a 32-page Reply Brief on September 18, 2018, with an additional 100 pages of exhibits.[13] In his Reply Brief, Vurimindi admitted his initial appellate brief contained over 51 individual issues, but claimed all the issues are necessary for this Court to review.

On September 24, 2018, this case was assigned to this panel for decision. Since that time, Vurimindi has filed more than 10 applications for

_____

[12] Although we can see the general nature of his attacks on appeal, each topic we have identified here contains so many sub-issues that we cannot discern each of Vurimindi's specific claims.

[13] We note that at the time he filed his Reply Brief, Vurimindi was released from incarceration, having served that portion of his sentence for these crimes.

relief seeking, among other things, to introduce additional evidence into the record and to compel the filing of transcripts from over 35 court appearances at the trial court. As soon as we rule on one of his "emergency" applications, Vurimindi files another request asking us to reconsider our previous ruling. His actions have made meaningful appellate review impossible.

As such, we begin our analysis of this case with the trial court's observation that Vurimindi's *pro se* status does not relieve him of his duty to follow the Rules of Appellate Procedure. T.C.O., 9/19/17, at 10 (citing **Jiricko v. Geico Ins. Co.,** 947 A.2d 206, n.11 (Pa. Super. 2008)). "Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." **In re Ullman**, 995 A.2d 1207, 1211–1212 (Pa. Super. 2010). Accordingly, *pro se* litigants must comply with the procedural rules set forth in the Pennsylvania Rules of Court; if there are considerable defects, we will be unable to perform appellate review. **Commonwealth v. Tchirkow**, 160 A.3d 798, 804-05 (Pa. Super. 2017) (citation omitted).

Before analyzing any of the issues in his rambling *pro se* brief, we must first determine whether the issues have been properly preserved for our review. The trial court and the Commonwealth maintain that Vurimindi has waived all issues on appeal. The fact the Vurimindi filed a timely 1925(b)

statement does not automatically equate with issue preservation. *See Jiricko,* 947 A.2d at 210. As our discussion *infra* reveals, the Pa.R.A.P. 1925(b) statement must be sufficiently "concise" and "coherent" such that the trial court judge may be able to identify the issues to be raised on appeal, and the circumstances must not suggest the existence of bad faith.

We previously held that a Rule 1925(b) statement is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the party plans to raise on appeal. *Riley v. Foley,* 783 A.2d 807, 813 (Pa. Super. 2001). "A Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." *Commonwealth v. Dowling,* 778 A.2d 683, 686–87 (Pa. Super. 2001). "Even if the trial court correctly guesses the issues [a]ppellants raise on appeal and writes an opinion pursuant to that supposition the issues [are] still waived." *Commonwealth v. Heggins,* 809 A.2d 908, 911 (Pa. Super. 2002).

If a 1925 (b) statement is too outrageous, we have dismissed the appeal without addressing any of the issues raised. *Kanter v. Epstein*, 866 A.2d 394 (Pa. Super. 2004) *appeal denied* 880 A.2d 1239 (Pa. 2005). *Kanter* involved a straightforward breach of contract action, where the two defendants inexplicably raised some 104 issues with multiple sub-issues in their 1925(b) statements. *Id.* at 401. The trial court was troubled by the number of issues raised and felt that, in addition to the Rules of Appellate

Procedure, the appellants also breached the duty of dealing in good faith with the court. *Id.* at 402. This Court agreed. "We can only conclude that the motive underlying such conduct [was] to overwhelm the court system to such an extent that the courts [were] forced to throw up their proverbial hands in frustration." *Id.* Rather than succumb to such tactics and chicanery, we quashed the appeal. *Id.* at 402-03.

We were faced with a similar voluminous 1925(b) statement in *Tucker v. R.M. Tours,* 939 A.2d 343 (Pa. Super. 2007), *aff'd,* 977 A.2d 1170 (Pa. 2009).[14] There, we also concluded the appellants had engaged in misconduct by filing a 1925(b) statement with the intent to overwhelm the courts. As we stated: "Our law makes it clear that Pa.R.A.P. 1925(b) is not satisfied by filing any statement. Rather, the statement must be 'concise' and coherent as to permit the trial court to understand the specific issues being raised on appeal." *Id.* at 346.

> Specifically, this court has held that when appellants raise an "outrageous" number of issues in their 1925(b) statement, the appellants have "deliberately circumvented the meaning and purpose of Rule 1925(b)" and [have] thereby effectively precluded appellate review of the issues [they] now seek to raise." We have further noted that such "voluminous" statements do not identify the issues that appellants actually intend to raise on appeal because the briefing limitations contained in Pa.R.A.P. 2116(a) makes the raising of so many issues impossible. "Further, this

---

[14] In *Tucker*, the appellant's first 1925(b) statement was 16 pages with 76 paragraphs plus exhibits. *Tucker*, 939 A.2d at 345. After the trial court allowed him to revise it, appellant's second 1925(b) statement was 8 pages with 34 paragraphs plus exhibits. *Id.* Here, Vurimindi's statement was 53 pages with 132 paragraphs.

type of extravagant 1925(b) statement makes it all but impossible for the trial court to provide a comprehensive analysis of the issues."

**Tucker**, 939 A.2d at 346 (citations omitted).

We recognize that not all lengthy 1925 (b) statements require dismissal of the appeal. For example in **Eiser v. Brown & Williamson Tobacco Corp.,** 595 Pa. 366, 938 A.2d 417 (2007) (plurality), the Pennsylvania Supreme Court concluded that the facts did not warrant a finding of waiver. Although they raised numerous issues for review, the court observed that appellants had filed "a complicated multi-count lawsuit with numerous defendants resulting in many trial court rulings." **Id.** at 427. The trial court in **Eiser** did not find that the appellants acted "in bad faith, intending to deliberately circumvent the meaning and purpose of Rule 1925(b)." **Id.** Rather, the trial court found counsel for appellants "took his marching orders from the case law requiring that all issues not raised are waived. Given the timeframe in which he had to file his Rule 1925(b) statement and the number of rulings made both before and during trial, it seems eminently reasonable, and certainly not outrageous, that counsel included a large number of issues...." **Id.**

In sum, the **Eiser** court held:

the number of issues raised in a Rule 1925(b) statement does not, without more, provide a basis upon which to deny appellate review where an appeal otherwise complies with the mandates of appellate practice. In a rare case, like **Kanter,** where a trial court concludes there was an attempt to thwart the appellate process

- 13 -

by including an exceptionally large number of issues in a rule 1925(b) statement, waiver may result.

*Id.* at 427–428 (footnote omitted).

The good faith inquiry our Supreme Court suggested in *Eiser* requires lower courts to consider whether the circumstances of the lawsuit at issue suggest that a lack of good faith is involved. "Only then should a litigant suffer the loss of appellate review due to the volume of issues raised." *Eiser,* 938 A.2d at 427 n. 16.

Shortly after the *Eiser* decision, this Court again concluded waiver was proper in *Jiricko v. Geico Ins. Co.,* 947 A.2d 206 (Pa. Super. 2008). In *Jiricko*, we noted that while Appellant's **five-page** 1925(b) statement could certainly be characterized as "lengthy," the crux of the problem was that the statement was "an incoherent, confusing, redundant, defamatory rant accusing opposing counsel and the trial court judge of conspiring to deprive [a]ppellant of his constitutional rights." *Jiricko,* 947 A.2d at 213. We concluded that there was no legitimate appellate issue presented in the appellant's 1925(b) statement. *Id.*

Moreover, after reviewing the record and the trial court opinion, we concluded that the appellant's statement was but another example of his breach of his duty of good faith and fair dealing with the court system. *Id.* Despite a court-ordered stay of proceedings, the appellant continued to file pleadings and overwhelmed the trial court to the point where appellant was found to be in contempt. *Id.* It was clear that the appellant's entire tactic

was to overwhelm and punish the opposing parties, as well as the judicial system. *Id.* at 213-14.

We stressed that *Jiricko* was not the type of case where an appellant was raising numerous issues in a complicated case in good faith. *Id.* at 214. Rather, the appellant's statement revealed a deliberate attempt to circumvent the meaning and purpose of Rule 1925(b) and to overwhelm the court system to such an extent the courts were "forced to throw up their proverbial hands in frustration." *Id.* Therefore, we concluded waiver was the appropriate remedy. *Id.*

Applying this line of precedents to the facts of this case, we note that the trial court found Vurimindi's filing of a **53-page** 1925 (b) statement, followed by an additional 8 issues, was done in bad faith. T.C.O., 9/19/17, at 14-15. As the trial court noted, it warned Vurimindi about filing too many issues on appeal, specifically telling him that such actions could result in the entire appeal being thrown out, and gave him a second opportunity to comply with Rule 1925(b).[15] *Id*. Instead of being more concise, Vurimindi added 8 more issues to his already voluminous list of alleged errors.

---

[15] Vurimindi filed his 1925(b) statement with his Notice of Appeal, before he was ordered by the Court to do so. Thus, the trial court gave him an opportunity to file an amended statement. We note that this Court previously held that a trial court does not have discretion to allow a litigant to file a second 1925(b) statement. *Tucker*, 939 A.2d at 347. However, in *Tucker*, the first statement filed was pursuant to a court order. Here, Vurimindi's first statement was not ordered by the Court, but was voluntarily provided.

Moreover, after he filed a 300-page brief with this Court, we struck the brief and gave Vurimindi a second opportunity to file a new brief that conformed with Chapter 21 of the Rules of Appellate Procedure, including Pa.R.A.P. 2135(a)(1) (providing that a principal brief shall not exceed 14,000 words). Although much shorter, the second brief still contained too many issues for us to possibly address them all. As the Commonwealth observed, Vurimindi faces deportation as a result of his convictions in this matter and therefore seeks to delay the finality of this proceeding for as long as possible.[16] Commonwealth Brief, at 18. The Commonwealth argues that Vurimindi has waived all of his issues for failure to litigate in good faith, comply with the Rules of Appellate Procedure, or develop any genuine argument. *Id.* at 12.

In his Reply Brief, Vurimindi claimed that he did not act in bad faith. He cites to numerous cases where the appellate courts found an appellant did not comply with the Rules of Appellate Procedure, but declined to quash the

---

Additionally, based on our disposition of this case, Vurimindi will not realize any advantage from the filing of a second statement.

[16] Vurimindi admits he is facing deportation, but that the order is stayed pending resolution of this appeal. Reply Brief at 7. We have never recognized deportation as a legitimate reason for allowing unitary review of issues more appropriately raised on collateral review, and we decline to do so on the facts of this case. *See Commonwealth v. Holmes*, 79 A.3d 562, 576 (Pa. 2013) (reaffirming *Commonwealth v. Grant* and holding, absent certain circumstances, claims of ineffective assistance of counsel are to be deferred to PCRA review).

appeal. Reply Brief at 10-11, 23-24. All of the cases he cited, however, are readily distinguishable from this one.[17] Significantly, all of these cases involved a small fraction of the number of issues Vurimindi tried to raise in this appeal. *See e.g. Rock v. Rangos*, 61 A.3d 239, 249 (Pa. Super. 2013) (finding no waiver when appellant discussed his *four* appellate issues in seven parts of his brief instead of four parts and the court's review of the *four* issues was not substantially impeded); *Commonwealth. v. Hennigan*, 860 A.2d 159, 160 (Pa. Super. 2004) (allowing review of the merits when the appellant's brief did not comply with Rule 2111, but the court was able to deduce appellant's *one* issue on appeal); *Commonwealth v. duPont,* 860 A.2d 525, 539 (Pa. Super. 2004) (addressing only the *three* points raised in appellant's statement of questions and finding waiver for all other questions under Rule 2116 (a)); *Commonwealth v. Hetzel*, 822 A.2d 747, 760 (Pa.

_____

[17] One of the cases Vurimindi relies on is inapposite because it involved a family fast track appeal. *P.H.D. v. R.R.D.,* 56 A.3d 702, 705 (Pa. Super. 2012) (recognizing that failure to file 1925(a)(2)(i) statement contemporaneous with a notice of appeal in a family fast track case does not divest the court of jurisdiction under Rule 905(a)(2), and finding dismissal was not appropriate when there was substantial compliance and no prejudice to opposing party). Another found no substantial defect in the brief. *Moore v. Miller*, 910 A.2d 704, 710 (Pa. Super. 2006) (concluding that neither the absence of a reproduced record nor the condition of appellant's brief hindered our ability to conduct a proper review of the claims raised on appeal). Another addressed the *six* issues on appeal because the trial court was able to write an opinion that generally addressed the 36 issues in his 1925(b) statement. *Boehm V. Riversource Life Ins. Co.,* 117 A.3d 308, 319 n.3. (Pa. Super. 2015).

Super. 2003) (addressing all **eight** of appellant's claims, even though they were 51 lines and two pages in length, which exceeded 15 lines and one page allowed under former Rule 2116 for the statement of questions involved);[18] ***Commonwealth v. Stradley***, 50 A.3d 769, 771, n.2 (Pa. Super. 2012) (reviewing appellant's **two** issues even though appellant failed to list them in a separate section called "statement of questions involved" as required by Rule 2116); ***In re Ullman,*** 995 A.2d 1207, 1211–12 (Pa. Super. 2010) (recognizing and addressing appellant's **one** cognizable claim from his brief, despite utter lack of compliance with the Rules of Appellate Procedure); ***Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity,*** 32 A.3d 800, 804 n.6 (Pa. Super. 2011), *aff'd sub nom.* 91 A.3d 680 (Pa. 2014) (reviewing appellants' **one** issue even though appellants failed to include a

---

[18] Rule 2116 was amended in 2013 to remove the page limit for the statement of questions involved and now uses a word limit instead. As the Note to this Rule provides:

> The word count does, however, include the statement of questions, and a party should draft the statement of questions involved accordingly, with sufficient specificity to enable the reviewing court to readily identify the issues to be resolved while incorporating only those details that are relevant to disposition of the issues. Although the page limit on the statement of questions involved was eliminated in 2013, verbosity continues to be discouraged. The appellate courts strongly disfavor a statement that is not concise.

Pa.R.A.P. 2116, Note.

statement of issues involved in accordance with Rule 2116(a) in their substituted brief *en banc*; noting that the required statement was included in the original brief to the merits panel); ***Commonwealth v. McEachin***, 537 A.2d 883, 885 n.1 (Pa. Super. 1988) (addressing appellant's *five* issues, despite his brief being 96 pages in violation of former Rule 2135,[19] but noting it is within this Court's discretion to quash appeals when defects in the brief are substantial); ***Maya v. Johnson and Johnson***, 97 A.3d 1203, 1211 n.4 (declining to find waiver when an appellant filed an 11-page 1925(b) statement with 23 paragraphs, and later reduced the number of issues in its

---

[19] Former Rule 2135 limited an appellate brief to 50 pages. It was changed in 2013 to limit the number of words in the principal brief to 14,000 and in the reply brief to 7,000. If a principal brief exceeds 30 pages, or a reply brief exceeds 15 pages, the brief must contain a certificate of compliance with this Rule. Vurimindi's principal and reply brief grossly exceed the 30 and 15 page limits in this Rule; Vurimindi filed no certificate of compliance, but rather, admitted his brief exceeded the word limits, and requested in his non-conforming brief, permission to exceed the limits. This shows he knew about the rule, but deliberately did not follow it, and did not seek prior approval of this Court to file a brief that exceeded the word limits of the Rule.

*Pro se* litigants, too, are obliged to provide a certification for a primary brief that exceeds thirty pages. *See* Pa.R.A.P. 2135(d) ("[T]he attorney **or the unrepresented filing party** shall include a certification that the brief complies with the word count limits." (emphasis added)). Rule 2101 underscores the seriousness with which we take deviations from our rules of procedure. "Briefs ... shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief ... of the appellant and are substantial, the appeal or other matter may be quashed or dismissed." Pa.R.A.P. 2101; ***Commonwealth v. Spuck***, 86 A.3d 870, 873–74 (Pa. Super. 2014). Thus, we could dismiss Vurimindi's appeal for his lengthy brief alone.

brief on appeal); ***Coleman v. Ogden Newspapers, Inc***. 142 A.3d 898 (refusing to find waiver despite a 16-page 1925(b) statement, when the statement included 15 pages of facts, argument, case-law and deposition excerpts but actually alleged only ***two*** errors on appeal); ***City of Coatesville v. Jarvis,*** 902 A.2d 1249, 1251 (Pa. Super. 2006) (declining to find waiver despite the appellant's nine-page, 36-paragraph 1925(b) statement, which failed to clearly identify the precise issues complained of on appeal, because trial court addressed the ***two*** issues it believed appellant tried to raise).

None of the cases Vurimindi relies on involved more than 8-10 issues, at most, compared to the preposterous number of issues Vurimindi wants us to address. Although the number of issues, by itself is not dispositive, when compared to the complexity of the case and the length of the trial, we cannot find that this case, involving a one-day bench trial, warrants the number of errors alleged by Vurimindi.

Vurimindi attributes his failures to follow the Rules on his "lack of legal experience" rather than bad faith. Reply Brief at 14. We disagree. As the trial court observed, "[Vurimindi] cannot plead ignorance. He is a well-educated individual [with] a master's degree." T.C.O., 9/19/17, at 15. "It is obvious that [Vurimindi] understands the law, and therefore, knows he is not following the law." ***Id.***

Vurimindi deliberately raised issues he knew he could not raise in this appeal. He raised numerous claims of ineffective assistance of counsel,

despite being specifically told not to file these claims in his direct appeal. *Id.*
As we found in *Kanter,* appellants "engage in misconduct when they attempt
to overwhelm the trial court by filing a Rule 1925(b) statement … that
contains a multitude of issues that they . . . ***cannot raise before this Court***."
*Kanter,* 866 A.2d at 402 (emphasis added).

Vurimindi's 1925 (b) statement of 53 pages was more than 10 times the
length of the five-page statement in *Jiricko.* It was not just lengthy, but as
in *Jiricko,* the crux of the problem was that the statement was "an incoherent,
confusing, redundant, defamatory rant accusing opposing counsel and the trial
court judge of conspiring to deprive Appellant of his constitutional rights."
*Jiricko*, 947 A.2d at 213. Vurimindi's defamatory rant against everything and
everyone involved in this case shows complete defiance toward the purpose
of appellate review.

Our review of the record and the trial court opinion leads us to conclude
that Vurimindi's voluminous 1925(b) statement and his 140-page brief are but
additional examples of his breach of his duty of good faith and fair dealing
with the court system.

Finally, it appears that Vurimindi wants us to grant him yet another
chance to file a brief that complies with the Rules. He cites our decision in
***Commonwealth v. Hill***, 632 A.2d 928, 929–30 (Pa. Super. 1993), where
we struck the *pro se* appellant's non-conforming brief and gave him thirty
days to file a new, conforming brief. In that case, when we struck the first

brief, we cautioned the appellant to observe the Rules of Appellate Procedure, especially Rules 2101, 2111, 2114-2133 which govern briefs and the citations to the record, and we warned him that if he failed to file such a brief, we would quash his appeal under Rule 2101.

Vurimindi fails to recognize that we already struck his first non-conforming brief and gave him a second opportunity to file a conforming brief. We also cautioned him to follow the rules. However, his second brief still does not comply with Chapter 21 of the Rules of Appellate Procedure. We cannot continue to give him multiple chances to follow the rules.[20]

In short, Vurimindi chose to represent himself in this matter. He chose to risk filing voluminous documents and addressing inappropriate issues despite being warned multiple times against such actions. He chose not to use the assistance of counsel in preparing the documents on this appeal, i.e. his 1925(b) statements, his appellate briefs, and his numerous so-called "emergency" applications for relief. He cannot now complain about the result or ask for another chance to have new counsel appointed at this late stage to file a third brief. **See** Reply Brief at 27-28.

---

[20] Because Vurimindi chose to proceed without counsel, his reliance on **Commonwealth v. Ely,** 554 A.2d 118, 119 (Pa. Super. 1989) is misplaced. There, we remanded for appointment of new counsel to file another brief when original counsel filed a brief that substantially did not comply with the Rules of Appellate Procedure. And, as noted, we gave him a second chance to follow the Rules.

This is not a complex case where a lengthy list of issues is warranted in good faith. This is a case where an appellant deliberately chose to overwhelm the court system. Instead of focusing on a few key issues and filing an appropriate 1925(b) statement with a brief that complied with Chapter 21, Vurimindi raised a multitude of issues, too numerous and too remote for us to address them all. A criminal defendant is entitled to a fair trial, not a perfect one. **Delaware v. Van Arsdall**, 475 U.S. 673, 681 (1986); **Commonwealth v. Wright**, 961 A.2d 119 (Pa. 2008). By ignoring the Rules, and claiming errors at every turn, Vurimindi has thwarted appellate review. As such, we conclude that the only appropriate remedy is waiver of all issues.

Appeal dismissed. Vurimindi's outstanding Application for Reconsideration of Order and Application for Clarification denied.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/18