J-S11030-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FREDERICK CORNELLIUS BROWN, | : | |
| JR. | : | |
| | : | No. 1874 EDA 2023 |
| Appellant | | |

Appeal from the Judgment of Sentence Entered May 3, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR0002066-2022

BEFORE: BOWES, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY McLAUGHLIN, J.: **FILED AUGUST 12, 2024**

Frederick Cornellius Brown, Jr. appeals from the judgment of sentence

entered following his convictions for Sale or Transfer of Firearms – Materially

False Written Statement ("Materially False Written Statement"), and Sale or

Transfer of Firearms – Duty of Persons ("Duty of Persons").[1] He challenges

the jurisdiction of the trial court, the denial of suppression, and the sufficiency

of the evidence. We affirm.

Brown's convictions stem from his purchase of multiple firearms. The

trial court aptly summarized the evidence presented at his jury trial as follows:

> On April 8, 2021, [Brown] purchased three firearms: a SAR9
> 9-millimeter caliber handgun, a Smith & Wesson M&P9 2.0
> 9-millimeter caliber handgun, and a Smith & Wesson

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6111(g)(4)(ii) and 6111(c), respectively.

M&P40C 2.0 40-caliber handgun, at Lock's Philadelphia Gun Exchange, 6700 Rowland Avenue, Philadelphia, Pennsylvania ("Lock's"). N.T. 3/7/2023, pp. 96-97. For each of these purchases, [Brown] indicated on application forms that he was the actual buyer of the firearm and that he was not buying the firearm on behalf of another person, unless that person was his spouse, child, grandchild, parent or grandparent.

On June 16, 2021, [Brown] purchased a Sig Sauer P-320C 45 caliber handgun from Firing Line, 1532 South Front Street, Philadelphia, Pennsylvania. *Id.* at 110. On August 23, 2021, [Brown] purchased a SAR9 9-millimeter caliber handgun from Delia's Gun Shop, 6104 Torresdale Avenue, Philadelphia, Pennsylvania ("Delia's"). *Id.* at 102. Two days later, on August 25, 2021, [Brown] returned to Delia's to purchase another SAR9 9-millimeter handgun. *Id.* at 105. Again, for each of these purchases, [Brown] indicated on application forms that he was the actual buyer of the firearm and that he was not buying the firearm on behalf of another person, unless that person was his spouse, child, grandchild, parent or grandparent.

On October 16, 2021, [Brown] purchased a Bersa Thunder 380 handgun from Johnston's Sporting Goods, 715 State Road, Croydon, Bucks County, Pennsylvania ("Johnston's"). *Id.* at 22. On October 29, 2021, [Brown] purchased two firearms, a Hi-Point C-9 9-millimeter caliber handgun and a Taurus G2C 9-millimeter handgun, from Unicorn's Armory, 1333 Minot Avenue, Croydon, Pennsylvania. *Id.* at 114. On November 3, 2021, [Brown] purchased a Taurus G2C 9-millimeter caliber handgun from Delia's. *Id.* at 106. Shortly thereafter, [Brown] purchased six additional firearms of the same make, model, and caliber from Johnston's on November 16, 2021, November 23, 2021, December 9, 2021, and January 6, 2022. *Id.* at 24-29. Again, for each of these six purchases, [Brown] indicated on application forms that he was the actual buyer of the firearm and that he was not buying the firearm on behalf of another person, unless that person was his spouse, child, grandchild, parent or grandparent.

On Wednesday, January 12, 2022, Detective Mark Zielinski ("Detective Zielinski") of the Bucks County District Attorney's Office met with Patricia McGuigan ("Mrs.

McGuigan'), the owner of Johnston's, to determine if she was familiar with [Brown]. Upon reviewing a photograph, Mrs. McGuigan stated she recognized [Brown] and that he had purchased firearms from her store numerous times. On Sunday, January 16, 2022, Mrs. McGuigan contacted Detective Zielinski to inform him that [Brown] had attempted to purchase another firearm at her store that day. *Id.* at 46. Mrs. McGuigan informed [Brown] that his background check was in research, and that she would notify him when he was approved. *Id.*

On January 18, 2022, Mrs. McGuigan informed [Brown] that his background check had been approved and that he could come purchase the firearm. *Id.* Detective Zielinski, accompanied by other members of law enforcement from the District Attorney's Office (collectively, "Law Enforcement"), traveled to Johnston's to conduct surveillance. *Id.* at 47. At approximately 2:13 P.M., [Brown] arrived at Johnston's, operating his 2016 Black Dodge Journey, with New Jersey License Plate # W64-KHT. *Id.* at 48. Law Enforcement observed from the parking lot as [Brown] paid in cash for a Taurus G2C 9-millimeter handgun and a box of 9mm ammunition. *Id.* at 53. [Brown] then exited Johnston's, carrying his purchases in a white plastic bag. *Id.* [Brown] left Johnston's parking lot and Law Enforcement, through continued surveillance, followed and observed [Brown] stop his vehicle at 1142 Kaighns Avenue, Camden, New Jersey. *Id.* at 135. Law Enforcement observed a male individual get into [Brown's] vehicle from the front passenger's side door. A short time later, the same individual exited the vehicle and walked away without anything noticeably in his hands or on his person. Law Enforcement then followed [Brown] to his residence at 3100 Grant Avenue, Philadelphia, Pennsylvania, where he exited his Dodge and walked into his apartment with no apparent items in his hands or on his person. *Id.* at [1]5[1]-[1]52. Special Agent Marta Santos, a member of Law Enforcement, walked over to [Brown's] vehicle and, looking through the window, did not see, in plain view, the white plastic bag, firearm, or box of ammunition [Brown] just purchased. *Id.* at 159. Law Enforcement researched the Alcohol, Tobacco, Firearms and Explosives ("ATF") database and discovered that [Brown] purchased twenty firearms since 2011, three of which were recovered from other individuals in the course

of criminal activity. N.T. 3/6/2023, p. 106, 114. [Brown] never reported these firearms to be lost or stolen.

On February 2, 2022, Law Enforcement received a tip from Pennsylvania State Police that [Brown] had attempted to purchase another firearm at Lock's. N.T. 3/7/2023, p. 164. At the time of his attempted purchase, [Brown] was informed that his background check was placed into research and that he would be notified when he was cleared for purchase. That same day, Detective Zielinski submitted an Affidavit of Probable Cause to Magisterial District Judge Frank W. Peranteau, Sr. of Bristol, Pennsylvania, and requested the issuance of an Arrest Warrant for [Brown], which was subsequently granted by His Honor.

Shortly thereafter, Lock's staff notified [Brown] that his background check cleared and that he could purchase the firearm. Law Enforcement traveled to Lock's to execute the arrest warrant and observed [Brown] exiting Lock's at approximately 12:10 P.M. *Id.* at 165. Detective Zielinski, joined by Special Agent Christopher Murano ("Agent Murano') of the Attorney General's Gun Task Force, approached [Brown], informed him he was under arrest, and orally gave him his *Miranda* warnings. *Id.* at 166-167. [Brown] was then handcuffed and transported to the Office of the District Attorney in Levittown, Bucks County, Pennsylvania. *Id.* at 176. Agent Murano confiscated carbon copies of the application forms, a receipt for a Taurus G2C firearm, the Taurus G2C firearm itself, and ammunition. *Id.* at 175. Upon arrival at the Office of the District Attorney in Levittown, Law Enforcement gave [Brown] his written *Miranda* warnings. *Id.* at 176. [Brown] signed the form acknowledging that he understood his rights and was waiving his right to speak with counsel. *Id.* at 177-178. [Brown] then stated to Law Enforcement that he was trying to "make ends meet" and that he had purchased at least fifteen firearms and sold them to friends and family and disclosed that most of the transfers were to individuals living in New Jersey. *Id.* at 206-207. As [Brown] spoke, Agent Murano wrote his statement:

> Question: Mr. Brown, I've introduced you to all the agents and detectives present and have read you your rights twice today. I'd like to ask you some questions concerning your firearms purchases. Okay?

- 4 -

Answer: Yes.

Question: How many guns have you ever purchased in your life, if you know?

Answer: That I recall, I'd say about 15.

Question: With the exception of the gun we seized from you today, do you know where any of those guns are now?

Answer: Yes.

Question: Okay. Relative to the guns that you could perceivably get back, how many?

Answer: Six.

Question: Where are those guns located?

Answer: Camden.

Question: Who is in possession of the rest of the guns that you have purchased?

Answer: Two of my grandsons, my son-in-law, two nephews, that's it for now.

Question: Are the persons you described able to purchase guns on their own?

Answer: No, because they are from New Jersey.

Question: Do they have criminal records that you know of?

Answer: No.

Question: I noticed that you have been buying several Taurus G2C handguns. Is there a particular reason for that?

Answer: No, it's just a cheaper gun.

Question: How does it occur that you purchased these guns for other people? Did they ask you to and provide the money?

Answer: Yes.

Question: Do you get anything out of this transaction?

Answer: Yes, $100. Like I said, these people are my friends, family and friends.

Question: You purchased a Taurus at Johnston's Sporting Goods a few weeks ago. What did you do with that gun immediately following the transaction in Croydon?

Answer: I believe I went to my cousin in Willingboro.

Question: A male jumped in the front of your car while you were in Camden after that transaction. Who was that person?

Answer: That was my nephew, Michael Brown. He's 46 years old, he's kind of heavy, he drives a white van.

Question: Did you know that you were being followed by us on that day that you bought the gun at Johnston's?

Answer: Absolutely not.

Question: What stores have you purchased guns from that you can recall?

Answer: Johnston's, Delia's, Lock's and the Firing Line and Unicorn in Croydon.

Question: After you made the gun transaction in New Jersey, you came back over the bridge and went to the Wawa near your apartment and spoke on the phone for about a half hour. Was that a conversation relative to guns?

Answer: Probably not. I could have been talking to anybody. If I had already done what you saw me do, there would be no reason to be talking about it.

Question: How do you get requests for guns for other people?

Answer: They call me on the phone.

Question: Have you ever bought guns for anyone in Philadelphia?

Answer: One of my neighbors, Danny. He lives in my complex.

Question: Does he drive a car?

Answer: He drives a big, black Escalade.

Question: What kind of gun did you buy for him?

Answer: A Taurus, I probably got it at Lock's.

Question: The gun that you bought today at Lock's, who was that gun for?

Answer: My cousin, his last name is Brown. We've always called him Bumpers. He lives in Willingboro, I believe on Beaverdale Drive.

Question: Is he going to be calling you looking for that gun?

Answer: Yes, he gave me the money for it. $500.

. . .

Question: So far we have Danny, Michael Brown, and Bumpers. Who else have you given guns to or purchased guns for?

Answer: Rashan Coles, he was jumped in Camden and they took the gun from him. He got jumped and stabbed.

Question: Was he hospitalized?

Answer: For about a day.

Question: Do you have physical custody of any of the other guns that you have ever purchased?

Answer: No.

Question: Okay, Mr. Brown. I think we are done. I'll ask Detective Zielinski to review this statement with you and ask you to make corrections, if there are any. Okay?

Answer: Yes.

> *Id.* at 206-210. Agent Murano then provided [Brown] this written statement to review and correct if necessary. *Id.* [at 210].

Rule 1925(a) Opinion, filed 9/6/23, at 1-7 (footnote omitted).

The jury found Brown guilty of 17 counts of Materially False Written Statement and 17 counts of Duty of Persons. The trial court sentenced Brown to an aggregate term of 10 to 20 years' incarceration.[2] Brown filed a post-sentence motion, which the trial court denied. This timely appeal followed. The court ordered Brown to file a Concise Statement of Matters Complained of on Appeal. Brown complied and filed a statement listing 29 issues. *See* Rule 1925(b) Statement, filed 8/7/23.

On appeal, Brown raises five issues:

A. Did the trial court err in denying [Brown's] Motion to Dismiss the illegal transfer of firearms charges for lack of jurisdiction?

B. Did the trial court err in holding that [Brown's] arrest was supported by probable cause?

C. Did the trial court err in finding that [Brown's] statements were knowingly, voluntarily, and intelligently made and not tainted by the illegal arrest?

D. Did the trial court err in admitting evidence of [Brown's] statement because no *corpus delicti* was established?

E. Were [Brown's] convictions for making materially false statements supported by sufficient evidence?

---

[2] The trial court imposed a sentence of five to 10 years' incarceration at each count to run concurrently, except for Counts 2 and 3, which were to run consecutively.

Brown's Br. at 10 (answers of trial court omitted).[3]

Brown's first three issues challenge the court's denial of his motion to suppress. Our standard of review is clear:

> [O]ur standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of

_____

[3] The trial court and the Commonwealth suggest that Brown has waived appellate review because his Rule 1925(b) Statement lists a large number of issues, many of which the trial court found redundant and "arguably frivolous." *See* Rule 1925(a) Op. at 14-15; Commonwealth's Br. at 18-21. Although Brown's 1925(b) Rule Statement is not well crafted, we decline to find waiver. The trial court did not find that Brown's counsel had acted in bad faith or in "an attempt to thwart the appellate process." *Eiser v. Brown & Williamson Tobacco Corp.*, 938 A.2d 417, 428 (Pa. 2007) (plurality). We likewise do not find either circumstance. Brown's Rule 1925(b) Statement was sufficiently concise and coherent for the trial court to be able to address the issues in Brown's Rule 1925(b) Statement in groups. *See Commonwealth v. Vurimindi*, 200 A.3d 1031, 1038 (Pa.Super. 2018) ("the Pa.R.A.P. 1925(b) statement must be sufficiently 'concise' and 'coherent' such that the trial court judge may be able to identify the issues to be raised on appeal, and the circumstances must not suggest the existence of bad faith"). Brown's brief follows essentially the same approach as the trial court, albeit subdividing what the trial court treated as "pretrial determinations" into two subgroups. *See* Brown's Br. at 10. He also submitted a brief substantially in compliance with the Rules of Appellate Procedure and did not otherwise stymie the appellate process. *See Vurimindi*, 200 A.3d at 1043 (finding waiver where appellant submitted a 53-page 1925(b) statement listing more than 290 issues, a 140-page brief, a 32-page reply brief with an additional 100 pages of exhibits, and numerous lengthy motions).

suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017) (internal citations omitted).

Brown argues that the trial court lacked jurisdiction to prosecute him for the charge of Duty of Persons. *See* 18 Pa.C.S.A. § 6111(c). He maintains that the Commonwealth was required to provide evidence beyond a reasonable doubt that he "sold, delivered, [or] transferred a firearm" in Pennsylvania and that he did so intentionally or knowingly. Brown's Br. at 19. He claims the Commonwealth "failed to establish [his] location at the time he sold, delivered, or transferred any of the firearms." *Id.* Without such evidence, he argues "the trial court did not have jurisdiction." *Id.*

"[A] person may be convicted under the law of this Commonwealth of an offense committed by his own conduct . . . if the conduct which is an element of the offense or the result which is such an element occurs within this Commonwealth[.]" 18 Pa.C.S.A. § 102(a)(1). If "the offense consists of the omission to perform a legal duty imposed by the law of this Commonwealth with respect to" a "thing or transaction in this Commonwealth[,]" a person may be convicted under the law of this Commonwealth. *Id.* at § 102(a)(5). The Commonwealth bears the burden of proving facts sufficient to establish jurisdiction, but "it may rely upon circumstantial evidence to meet this burden." *Commonwealth v. Passmore*, 857 A.2d 697, 709 (Pa.Super. 2004) (citation omitted).

- 10 -

Section 6111(c) places a duty on "[a]ny person who is not a licensed importer, manufacturer or dealer and who desires to sell or transfer a firearm to another unlicensed person" other than a parent, child, grandparent or grandchild. 18 Pa.C.S.A. § 6111(c). Such persons have a duty to make such sales or transfers of firearms "only upon the place of business of a licensed importer, manufacturer, dealer or county sheriff's office, the latter of whom shall follow the procedure set forth in this section as if he were the seller of the firearm." *Id.*

Here, Brown was charged with and convicted of failing to perform the duty imposed by Section 6111(c) as to firearms he had in Pennsylvania. Despite his not being "a licensed importer, manufacturer or dealer," he transferred the firearms at a location that was not "the place of business of a licensed importer, manufacturer, dealer or county sheriff's office." 18 Pa.C.S.A. § 6111(c). The court thus had jurisdiction under Section 102(a)(5). *See* 18 Pa.C.S.A. § 102(a)(5); *Commonwealth v. Robinson*, 128 A.3d 261, 270 (Pa.Super. 2015) (*en banc*). Although Brown claims that the Commonwealth was required to show that he transferred the firearms in Pennsylvania to establish jurisdiction, Brown's failure to perform a "legal duty imposed by the law of this Commonwealth with respect to . . . a relationship to . . . a thing . . . in this Commonwealth" gave the court jurisdiction over the matter. 18 Pa.C.S.A. § 102(a)(5); *Cf. Commonwealth v. Ohle*, 470 A.2d 61, 69 n.12 (Pa. 1983) (explaining that although Section 102(a)(5) "refer[s] to a 'legal duty imposed by the law of this Commonwealth,'" it "makes no

requirement that the duty be carried out within Pennsylvania"). Brown's claim is meritless.

Next, Brown challenges the legality of his arrest. He argues that it was not supported by probable cause because "there was no evidence that any crime had been committed, let alone that [he] had committed seventeen counts of illegal transfer of a firearm and seventeen counts of making materially false statements in the purchase of a firearm." Brown's Br. at 28. He contends that the only available evidence was that he had bought numerous firearms that he was licensed to purchase and possess.

"In determining whether probable cause exists, we apply a totality of the circumstances test." *Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009). We determine whether there was a reasonable belief, based on facts and circumstances within the officer's knowledge, that the defendant had committed or was committing a crime. *Id.* There need be "*only a probability*, and not a *prima facie* showing, of criminal activity." *Id.* (emphasis in original, internal quotations and citation omitted).

The trial court rejected Brown's argument. It determined that the arrest warrant was valid and there was sufficient information "to indicate a fair probability that a crime was committed, and that [Brown] committed said crime." Rule 1925(a) Op. at 19. This information included:

> [T]he surveillance observations from Detective Zielinski and his team on January 18, 2022. The Affidavit [of Probable Cause] also contained a list of twenty (20) firearms [Brown] has purchased, and information that three (3) of these firearms have been recovered in the course of criminal

> activity, one (1) in Pennsauken, New Jersey and two (2) in Camden, New Jersey.

*Id.*

The record supports the trial court's finding of probable cause and it committed no legal error in making this determination. In the affidavit of probable cause, the officer noted that the three firearms recovered from New Jersey were never "reported stolen or missing, and none were ever lawfully transferred to another person by BROWN." Affidavit of Probable Cause, filed 2/2/22, at ¶ 13. The affidavit also noted the firearms Brown had purchased, stating that they were of the sort used for straw purchases and that Brown would have had to attest to being the "actual buyer" to buy the guns. Perhaps most important, the affidavit detailed the surveillance team's observations of Brown purchasing a handgun that was placed into a white bag in his car, having an interaction with a person in his car, and then returning home without the bag either on his person or in his car. The totality of the circumstances supported the finding of probable cause to arrest Brown for selling, delivering, or transferring firearms in violation of Section 6111.

Brown also claims that his statement to Agent Murano "[was] tainted by the illegal arrest and as a result, should have been excluded from evidence." Brown's Br. at 30. Since we conclude that Brown's arrest was supported by probable cause, this claim is likewise meritless.

Next, Brown claims that the trial court erred in admitting his statement because the Commonwealth did not prove the *corpus delicti*. The *corpus delicti*

rule is a rule of evidence, and we review a court's evidentiary rulings for an abuse of discretion. ***Commonwealth v. Hernandez***, 39 A.3d 406, 411 (Pa.Super. 2012) (citation omitted). An abuse of discretion occurs when there is an "overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Id.*** (citation omitted).

The *corpus delicti* ("the body of the crime") rule requires the Commonwealth "to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted." ***Id.*** at 410 (citation omitted); ***Commonwealth v. Cuevas***, 61 A.3d 292, 295 (Pa.Super. 2013). Establishing the *corpus delicti* involves a two-step process. First, to admit the statement into evidence, the Commonwealth must prove that a crime occurred, with evidence independent of the statement. The Commonwealth must carry this initial burden by a preponderance of the evidence. ***See Hernandez***, 39 A.3d at 411. The first step requires only that the evidence "be more consistent with a crime than with an accident." ***Id.*** at 412 (cleaned up). In the second step, for the fact finder to consider the statement, the Commonwealth must prove the *corpus delicti* beyond a reasonable doubt. ***Id.*** at 411. The Commonwealth may satisfy its burden by circumstantial evidence. ***Id.***

The *corpus delicti* rule is subject to the "closely-related crimes" exception. This exception allows the admission of the defendant's statement as to separate crimes with which the defendant is charged even if independent

- 14 -

evidence establishes the *corpus delicti* of only one of those crimes. In such a case, the statement is admissible so long as "the relationship between the crimes charged [is] sufficiently close [to] ensure that the purpose underlying the *corpus delicti* rule is not violated." **Commonwealth v. Dewald**, No. 199 MDA 2023, 2024 WL 2757102, at *8 (Pa.Super. May 30, 2024) (unpublished memo.). "[T]he policy underlying the *corpus delicti* rule [is] to avoid convictions for crimes that did not occur[.]" **Id.** (cleaned up). "Whether the crimes are sufficiently close to justify invoking the exception must be determined on a case[-]by[-]case basis." **Id.** (cleaned up).

Brown limits his argument to the first step of the *corpus deliciti* rule, the court's admission of his statement. He alleges that "there was not sufficient independent evidence that any crime was committed." Brown's Br. at 34. He further argues that the trial court improperly relied on the "closely related crimes" exception. He maintains that the trial court improperly relied on the evidence that he committed Materially False Written Statement to find the *corpus* for all crimes charges. In his view, the Commonwealth did not establish the *corpus delicti* of that crime because "[the] purchases only become criminal if the Commonwealth can prove beyond a reasonable doubt that [Brown] knowingly and intentionally made misstatements on the required forms at the time he made those purchases." **Id.** at 36.[4]

_____

[4] Brown's claim that the closely-related crimes exception did not apply because "the two charges do not share common elements" is utterly without
*(Footnote Continued Next Page)*

The trial court did not abuse its discretion by admitting Brown's statement. Each time Brown purchased firearms he completed an application in which he attested that he was the "actual buyer" of the firearm and that he was not acquiring the firearm on behalf of another person. *See* N.T., 3/7/23, at 24-29; 96-97; 105; Commonwealth's Exhibits C-5 to C-21 (Section B 33). Yet, some of the firearms he purchased were recovered outside of his possession during criminal investigations, had not been reported stolen, and were never lawfully transferred to another person by Brown. This evidence was sufficient to prove circumstantially, by a preponderance of the evidence, that the crime of Materially False Written Statement had occurred. *See* 18 Pa.C.S.A. § 6111(g)(4)(ii). This charge was sufficiently closely related to Duty of Persons to ensure that the purpose behind the *corpus delicti* rule – avoiding convictions for crimes that did not occur – was served. The closely-related crimes exception properly applied here. The Commonwealth thus satisfied the *corpus delicti* rule for both charges, at a preponderance level.

Brown's final issue on appeal challenges the sufficiency of the evidence. He maintains that the evidence only supports two of the 17 convictions for Materially False Written Statement, relating to the firearms recovered in New Jersey. For the remaining counts, he claims "there is no evidence that [he]

_____

merit. Brown's Br. at 36. The Supreme Court roundly rejected the notion that the exception requires shared elements in 2003. *See Commonwealth v. Taylor*, 831 A.2d 587, 596 (Pa. 2003) ("The closely related crimes exception does not require that the crimes share a common element.").

had intent to transfer the firearms at the time he purchased them." Brown's Br. at 40. Additionally, he argues that the Commonwealth failed to present sufficient evidence that he knowingly made false statements that he was the actual buyer at the time he executed the forms. *Id.* at 39

When reviewing a sufficiency claim, we view the evidence in the light most favorable to the verdict winner. ***Commonwealth v. Kearney***, 225 A.3d 590, 594 (Pa.Super. 2019). The evidence is sufficient if it proves each element of the offense beyond a reasonable doubt. ***See id.*** "Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Id.*** (citation omitted). The Commonwealth may carry its burden with wholly circumstantial evidence. ***Id.***

The Commonwealth presents sufficient evidence of Materially False Written Statement when it proves beyond a reasonable doubt that the defendant, "in connection with the purchase, delivery or transfer of a firearm . . . knowingly and intentionally: . . . [made] any materially false written statement, including a statement on any form promulgated by Federal or State agencies[.]" 18 Pa.C.S.A. § 6111(g)(4)(ii). The Crimes Code defines intentionally and knowingly as follows:

**(b) Kinds of culpability defined.--**

   (1) A person acts intentionally with respect to a material element of an offense when:

- 17 -

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b)(1)-(2).

Here, the trial court concluded that Brown's claim lacked merit.

To purchase these firearms, [Brown] completed federal and state forms to pass background checks. On the federal ATF application form, [Brown] indicated that he was the "actual transferee/buyer of firearms listed on [the] form and any continuation sheets." Importantly, [Brown] acknowledged that he could not be the actual transferee/buyer if he was "acquiring the firearms on behalf of another person" and that if he was not the actual transferee/buyer, the "licensee cannot transfer firearms to [him]." Commonwealth Exhibit C-4. On the Pennsylvania State Police Application form, [Brown] indicated that he was the "actual buyer of the firearm as defined under 18 Pa.C.S. § 6102 listed on [the] application/record of sale." N.T. 3/7/2023, pp. 21, 24-26. Again, [Brown] also acknowledged that he could not be considered the actual buyer if he was "acquiring the firearm on behalf of another person unless [he was] legitimately acquiring the firearm as a gift for any of the following individuals who are legally eligible to own a firearm: (1) spouse, (2) parent, (3) child, (4) grandparent, and (5) grandchild." *Id.* at 21.

- 18 -

The Commonwealth presented testimony from several witnesses and corroborating evidence, including [Brown's] *own confession* and the fact that two firearms were recovered during the course of criminal activity in New Jersey, that he purchased the firearms for persons other than those listed as exceptions to the "actual buyer" requirement on both the federal and state forms.

Rule 1925(a) Op. at 33 (emphasis in original).

Brown's sufficiency claim is meritless. Viewing the evidence in the light most favorable to the Commonwealth, as it was the verdict-winner, the evidence established that Brown made materially false statements when he answered "yes" on the federal and state forms inquiring if he was the actual buyer of the firearms.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/12/2024