J-A08029-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DELRE MCCREA | : | |
| | : | |
| Appellant | : | No. 789 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 29, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002315-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DELRE MCCREA | : | |
| | : | |
| Appellant | : | No. 790 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 29, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002316-2019

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                          **FILED:  JUNE 7, 2021**

---

[*] Former Justice specially assigned to the Superior Court.

Delre McCrea (Appellant) appeals[1] from the judgment of sentence imposed after the trial court convicted him of two counts each of indecent assault and harassment.[2]  We affirm.

The trial court summarized the underlying facts as follows:

The complainants/victims, "N.W." and "A.C.", were respectively ages 17 and [13] at the time Appellant assaulted them, and they both were students at John W. Hallahan High School located in the city and county of Philadelphia, Pennsylvania.

N.W. testified at trial that on January 30, 2019, she took the Number 32 SEPTA bus home from school.  Attired in her school uniform, N.W. boarded the bus with her friend around 2:45 p.m. at the intersection of 17th Street and John F. Kennedy Boulevard. The bus initially was crowded and there was nowhere to sit, but a male, later identified as Appellant, gave up his seat for N.W. and her friend.  N.W. sat in an aisle seat located in the middle of the bus near the exit doors.  N.W.'s friend sat beside her in the window seat, and Appellant sat diagonal from N.W. on the other side of the aisle.  N.W. noticed that Appellant was acting "strange" and was "looking back at [her] and making [her] feel a little uncomfortable."  At one point, Appellant held his cellular phone in the girls' direction and N.W. saw a "flash" as though Appellant photographed them.

When the bus pulled over at a stop on Allegheny Avenue, Appellant "pulled the cord and stood up . . . right next" to N.W. The bus was no longer crowded by then, but Appellant stood right beside N.W. and began "rubbing" his penis against her left shoulder.  When N.W. moved away, Appellant "just moved closer" to her.  Neither N.W. nor Appellant spoke during the incident and N.W. "felt as though [she] had nowhere to go" and "didn't know

---

[1] Appellant complied with the dictates of the Pennsylvania Supreme Court in **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018) (holding prospectively "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each case.").  On June 15, 2020, this Court *sua sponte* consolidated the appeals.

[2] 18 Pa.C.S.A. §§ 3126(a)(1), (8) and 2709(a)(1).

what was happening." Appellant remained on the bus and continued rubbing his penis against N.W. until they reached the next stop, upon which he "sprinted off the bus." N.W. testified that it "felt like five minutes" that Appellant rubbed against her and made her "uncomfortable and scared."[2]

> [2] At trial, the Commonwealth presented videotape[3] from SEPTA showing both N.W. and Appellant as bus passengers sitting near each other, but the video does not capture the timeframe of the actual incident.

N.W. exited the bus at another stop and called her mother [ ]. [Her mother] testified she was working when she received the call from N.W., who was "crying hysterically" and advised that a man on the bus "was playing with her hair and rubbing his genitals on her." [Her mother] immediately called SEPTA police and left a phone message when nobody answered, and she soon after received a return call advising her to take N.W. to the Special Victims Unit ("SVU") of the Philadelphia Police Department.

The second victim, A.C., testified that she had been riding the Number 32 SEPTA bus when the incident with N.W. occurred on January 30th, but that she did not witness the alleged assault. Around two weeks later, on February 14, 2019, A.C. took the same Number 32 bus home from school. She boarded the bus in her school uniform, saw and recognized Appellant who was already seated, and sat in the seat in front of Appellant. A.C. sat alone and leaned against the bus window for the typically 35-minute ride home.

When A.C. was about halfway home, she "felt a hand . . . brushing by the right side of [her] breast." She felt "fingers and knew it was a hand . . . pressing into [her] breast." A.C. turned around and said "[e]xcuse me" to Appellant, who then pushed the lever

---

[3] Some trial exhibits, but no SEPTA videos, were transmitted to this Court with the certified record. The record contains two screen captures from a video depicting the assault of N.W.; there are no screen captures depicting the assault of A.C. It is the appellant's responsibility to ensure the certified record contains all necessary items, in reviewable format, for this Court to assess his claims. **See Commonwealth v. B.D.G.**, 959 A.2d 362, 372 (Pa. Super. 2008) (*en banc*).

to have the bus driver pull over at the next stop. Appellant rose to his feet and "stared" at A.C. before exiting the bus at the same stop which he exited after assaulting N.W.[4] A.C. felt "scared" and "anxious" and she called her mother and told the bus driver what occurred.[4] A.C. and her mother subsequently contacted the police and went to the SVU, where Police Officer Miquon Wilson interviewed A.C.

> [4] The Commonwealth presented videotape from SEPTA showing A.C. seated in front of Appellant on the bus. The video captures the timeframe in which Appellant touched A.C. and then exited the bus, but Appellant's hands are not visible in the videotape.

Thirteen days later, on February 27, 2019, A.C. again saw Appellant on the SEPTA 32 bus while going to school around 6:15 a.m. She immediately text messaged her mother and her mother called the police, who came to the bus and arrested Appellant.

Trial Court Opinion, 8/13/20, at 2-4 (record citations and one footnote omitted).

On November 27, 2019, the trial court convicted Appellant of two counts each of indecent assault and harassment.[5] On January 29, 2019, the court sentenced Appellant to an aggregate 11½ to 23 months of imprisonment. Appellant filed this timely appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

_____

[4] The bus driver did not contact police, and told A.C. she should have "said something louder." N.T., 11/27/19, at 63.

[5] The court acquitted Appellant of two counts of corrupting the morals of a minor, and one count each of unlawful contact with a minor and indecent assault without consent. **See** 18 Pa.C.S.A. §§ 6301(a)(1)(i), 6318(a)(1), and 3126(a)(1).

On appeal, Appellant presents the following issues:

1. Did not the lower court err by consolidating Appellant's cases for trial, in violation of the Rules of Criminal Procedure, causing prejudice to Appellant, where the criminal acts alleged in the two cases were insufficiently similar and where no proper purpose permitting consolidation was presented by the Commonwealth under the facts of the case?

2. Did not the lower court err by denying Appellant's request for an adverse inference instruction due to missing evidence, to wit, the missing SEPTA video capturing the time of the alleged assault of complainant N.W.?

3. Was not the evidence insufficient to convict Appellant of indecent assault in the second of the consolidated cases in that the evidence failed to prove beyond a reasonable doubt that Appellant had indecent contact with complainant A.C. for the purpose of arousing sexual desire?

4. Was not the evidence insufficient to convict Appellant of harassment in the second of the consolidated cases in that the evidence failed to prove beyond a reasonable doubt that Appellant subjected complainant A.C. to physical contact with intent to harass, annoy or alarm complainant A.C.?

Appellant's Brief at 4-5.

In his first issue, Appellant claims the trial court erred in granting the Commonwealth's motion to consolidate his cases for trial. Appellant's Brief at 21-43. Appellant states:

In this case, the lower court permitted the consolidation of two cases for trial which were not so similar as to prove identity, or comprise a common plan, scheme or design, or demonstrate the absence of mistake or accident. The result was to prejudice Appellant by risking the natural consequences of such consolidation — the tendency of the factfinder to convict not for the asserted evidentiary purposes put forth to justify consolidation, but because consolidation of cases for trial tempts conviction of a defendant through the illegitimate lure of propensity evidence.

*Id.* at 21.

We recognize:

In reviewing a trial court decision to consolidate or to sever offenses for trial, our standard is abuse of discretion. Offenses charged in separate informations may be tried together if they are "based on the same act or transaction" or if "the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.Pro. 582(A)(1). The court has discretion to order separate trials if "it appears that any party may be prejudiced" by consolidating the charges. Pa.R.Crim.Pro. 583.

Our Supreme Court has established a three part test, incorporating these two rules, for deciding the issue of joinder versus severance of offenses from different informations. The court must determine

> whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Thomas*, 879 A.2d 246, 260 (Pa. Super. 2005) (some citations omitted).

The trial court in this case determined:

Here, at the motion hearing, this Court found that the two criminal episodes shared sufficient similarities such that each incident would be admissible in the prosecution of the other. Both incidents occurred on the same Number 32 SEPTA bus. Both incidents occurred in the same geographic location — *i.e.*, near the bus stop where Appellant exited the bus on each occasion. Both incidents occurred just prior to Appellant exiting the bus. Both incidents involved sexual contact with minors. Both incidents involved minors from the same school dressed in school uniforms. Both incidents occurred less than two weeks from each other.

Given these similarities, proof of each assault tended to prove the other or to establish Appellant as the perpetrator. In other words, "there [was] such a logical connection between the crimes that proof of one [would] naturally tend to show that [Appellant] is the person who committed the other." [**Commonwealth v.**] **Rush**, 538 Pa. 104, 112 [(Pa. 1994)].

Meanwhile, the incidents involved different victims and occurred 13 days apart. They therefore were "capable of separation by the jury so that there [was] no danger of confusion." [**Commonwealth v.**] **Knoble**, 188 A.3d 1199, 1205 [(Pa. Super. 2018)]. Consequently, there was no risk of undue prejudice because evidence of one crime would not tend to convict Appellant of the other "only by showing his propensity to commit crimes, or because the jury [would be] incapable of separating the evidence or could not avoid cumulating the evidence." [**Commonwealth v.**] **Newman**, 528 Pa. 393, 401 [(Pa. 1991)].

Trial Court Opinion, 8/13/20, at 6-7 (record citation omitted).

We agree with the trial court's analysis. With respect to the first part of the "consolidation test," the evidence of each assault would have been admissible in a separate trial for the other. Pennsylvania Rule of Evidence 404(b)(2) permits the admission of evidence of other crimes, wrongs, or acts when the evidence is relevant for a purpose other than showing criminal propensity, including common plan.[6] Second, the evidence was "capable of separation by the [fact-finder,] so as to avoid the danger of confusion." **Thomas**, 879 A.2d at 260. Appellant was tried by a judge, not a jury. Our

---

[6] "Factors to be considered to establish similarity are the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed." **Commonwealth v. Dozzo**, 991 A.2d 898, 902 (Pa. Super. 2010) (citation omitted). As noted, the trial court found substantial similarities in the assault charges.

- 7 -

Supreme Court has stated that in a non-jury trial, "it is presumed that a trial court, sitting as fact-finder, can and will disregard prejudicial evidence." *Commonwealth v. Fears*, 86 A.3d 795, 819 (Pa. 2014) (citation omitted). In a bench trial, the judge is presumed to be able to separate the evidence from the different crimes. *Commonwealth v. Gribble*, 863 A.2d 455 (Pa. 2004) (defendant not prejudiced by failure to sever his case from that of co-defendant in bench trial because trial court was presumed to be able to separate evidence against each defendant). Lastly, Appellant has not met his burden of demonstrating he was prejudiced by consolidation. Rather, most of his argument advocates for change to the current law on consolidation, which is not the function of this Court. *See* Appellant's Brief at 21-43. We have stated:

> [O]ur role as an intermediate appellate court is clear. "It is not the prerogative of an intermediate appellate court to enunciate new precepts of law or to expand existing legal doctrines. Such is a province reserved to the Supreme Court." *Moses v. T.N.T. Red Star Exp.*, 725 A.2d 792, 801 (Pa. Super. 1999). It is well-settled that "the Superior Court is an error correcting court and we are obliged to apply the decisional law as determined by the Supreme Court of Pennsylvania." *Commonwealth v. Montini*, 712 A.2d 761, 769 (Pa. Super. 1998).

*Matter of M.P.*, 204 A.3d 976, 981 n.2. (Pa. Super. 2019). This Court has "underscore[d] our role as an intermediate appellate court," recognizing our decisions "may not be disposition-driven[, and w]e are bound by decisional and statutory legal authority, even when equitable considerations may compel a contrary result." *Id.* Accordingly, any change to the law must originate

- 8 -

from our Supreme Court and any statutory change must come from the legislature. In sum, Appellant's argument regarding consolidation does not merit relief because the trial court did not abuse its discretion in granting the Commonwealth's motion to consolidate the two cases for trial.

In his second issue, Appellant maintains the trial court erred "by denying Appellant's request for an adverse inference instruction due to missing evidence, to wit, the missing SEPTA video capturing the time of the alleged assault of complainant N.W." Appellant's Brief at 43 (unnecessary capitalization omitted). Acknowledging that he was tried in a bench trial, Appellant makes an unusual — but not unprecedented — argument that the trial court "**erred by failing to issue itself proper instructions as factfinder** when it determined that the requirements for an adverse inference instruction were not met, and the lower court erred, under the circumstances, by not considering an inference that the contents of the missing video would have been adverse to the prosecution and favorable to the defense." *Id.* 47-48 (emphasis added).

We found a similar issue to be meritless where the appellant "waived his right to a jury trial and was tried instead before the bench. Appellant acknowledged this, yet requested a specific jury instruction on the issue of malice." *Commonwealth v. Akhmedov*, 216 A.3d 307, 321 (2019), *appeal denied,* 224 A.3d 364 (Pa. 2020). We stated:

> Because Appellant waived his right to a jury trial and was instead tried before the bench, we understand this argument to challenge

the court's application of the legal standard for malice. In non-jury trials, we presume the court is "imbued with the knowledge of the law that he would have given in a formal charge in a jury case."

*Id.* at 320 (citations omitted).

Here, the trial court was likewise "imbued with the knowledge of the law." "Where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and, without satisfactory explanation he fails to do so, the jury may draw an inference that it would be unfavorable to him." ***Commonwealth v. Trignani***, 138 A.2d 215, 219 (Pa. Super. 1958). However, as the trial court explained:

> Pennsylvania's Suggested Standard Criminal Jury Instructions suggest that an adverse inference **may** be drawn against a party, in specified circumstances, where that party fails to produce tangible evidence at trial. The Instruction states in pertinent part that:
>
> > If three factors are present, and there is no satisfactory explanation for a party's failure to produce an item, the jury is allowed to draw a common-sense inference that the item would have been evidence unfavorable to that party. The three necessary factors are:
> >
> > *First*, that the item is available to that party and not to the other;
> >
> > *Second*, that it appears the item contains or shows special information material to the issue; and
> >
> > *Third*, that the item would not be merely cumulative evidence.
> >
> > Therefore, if you find these factors present and there is no satisfactory explanation for the [party's] failure to produce [the item], at this trial, you may infer, **if**

- 10 -

> **you choose to do so**, that it would have been evidence unfavorable to [the party].

> Pa. SSJI (Crim), § 3.21B.

> "The Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial judges in crafting jury instructions; rather, as their title suggests, the instructions are guides only." ***Commonwealth v. Simpson***, 66 A.3d 254, 274 fn.24 (Pa. 2013).

> As fact finder, this [c]ourt duly considered that the Commonwealth's video evidence did not capture the timeframe of Appellant's alleged assault on N.W. Nevertheless, this [c]ourt concluded that an adverse inference would be improperly based on speculation that SEPTA, at some point, actually possessed videotape that captured the Appellant and N.W. during the timeframe of the alleged assault — *i.e.*, when Appellant stood beside N.W. holding the overhead rail, waiting for his stop. Neither the assistant district attorney nor the investigating detectives ever viewed or even possessed a second video [of Appellant and N.W.], which trial counsel assumed would show Appellant and N.W. during the precise timeframe of the assault, and which SEPTA purportedly erased seven (7) days after the incident.

> Because it would be too speculative to conclude that there existed relevant videotape evidence available to the Commonwealth but not to the defense, this [c]ourt did not abuse its discretion in declining to draw an adverse inference against the Commonwealth for failing to produce the purported missing video.

Trial Court Opinion, 8/13/20, at 7-9 (record citation omitted, underlined emphasis in original, bold emphasis added).

Appellant takes issue with the court's findings, claiming the Commonwealth "conceded" the existence of a missing video. Appellant's Brief at 47. He also argues that the email exhibits attached to his Motion for a Missing Evidence Instruction "presuppose the existence of the missing video, [and] ultimately conclude that such video is no longer available because the

- 11 -

video was not tagged for preservation within 7 days of recording." *Id.* Lastly, Appellant suggests "the angles of the views in the video that <u>was</u> obtained demonstrate that someone standing next to N.W. would have been recorded. It is common knowledge that video cameras on public transportation record continuously; there is no basis for the court's suggestion that video of the moment of the alleged indecent contact might not exist." *Id.* (underlining in original).

We are not persuaded by Appellant's argument. We have reviewed the record, including the email exchange between defense counsel and SEPTA Police Officer Evan Horn,[7] as well as the argument at trial concerning the allegedly missing video. The record supports the trial court's conclusion that the existence of a second video of Appellant and N.W. is speculative at best.

For example, there is nothing in the email exchange between defense counsel and Officer Horn that "presupposes" the existence of additional video; rather, defense counsel acknowledges that such video "might not exist." Motion for Missing Evidence Instruction, 10/22/19, Exhibit A (September 11, 2019 email to Officer Evan Horn). The rest of the exchange concerns specifics about the time and date of the incident, including the fact that the existing

---

[7] In the exchange, defense counsel admits SEPTA police were not involved in the investigation. Motion for Missing Evidence Instruction, 10/22/19, Exhibit A (September 11, 2019 email to Officer Evan Horn).

video has an incorrect time-stamp, and the only video SEPTA acknowledges having is the one provided to the Commonwealth. *Id.*

Further, there was no testimony at trial regarding the existence of a second video of Appellant and N.W. *See* N.T., 11/27/19, at 94-98. During argument, which was brief, the Commonwealth alternately concedes there may have been another video, but they were unable to obtain it from SEPTA, and/or/but they are unsure whether another video existed. *Id.* In any event, it is clear that if there was such a video, it was never in the Commonwealth's possession. *Id.* Also, even if there was such a video, there is no indication that it contained evidence favorable to Appellant. There is no support for Appellant's claim that it is "common knowledge" SEPTA video cameras run continuously.

We reiterate that the videos entered into evidence at trial were not included in the certified record transmitted to this Court. In addition, the trial testimony indicates that SEPTA's video technology was less than perfect. As noted, the time-stamps on the videos were incorrect, and despite the video capturing the time of the assault of the second victim, A.C., there was no footage of Appellant's hands, and the Commonwealth described the video as "blurry." N.T., 11/27/19, at 74-75.

Lastly, we have reviewed the screen captures, both of which corroborate N.W.'s testimony. The first screen capture shows Appellant standing several feet from N.W., with an unobstructed path to the exit; the second shows

Appellant directly behind where N.W. is seated, with his lower body touching her shoulder and arm area. Thus, it appears from the screen captures, coupled with N.W.'s testimony, that any missing video would have corroborated the Commonwealth's account of Appellant's crimes. Accordingly, the trial court did not err in determining "it would be too speculative to conclude that there existed relevant videotape evidence available to the Commonwealth but not to the defense," and we discern no abuse of discretion in the trial court's decision not to draw an adverse inference against the Commonwealth.

In his third and fourth issues, Appellant contends the evidence was insufficient to sustain his convictions with respect to A.C. Appellant's Brief at 48-53. We disagree.

In reviewing a sufficiency challenge, the standard of review we apply is:

whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

- 14 -

***Commonwealth v. Smith***, 206 A.3d 551, 557 (Pa. Super. 2019) (citations

and brackets omitted), ***appeal denied***, 217 A.3d 202 (Pa. 2019).

> Regarding indecent assault, the Crimes Code states:
>
> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and . . . the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3126(a)(8).

> We have explained:
>
> The separate crime of indecent assault was established because of a concern for the outrage, disgust, and shame engendered in the victim rather than because of physical injury to the victim. Due to the nature of the offenses sought to be proscribed by the indecent assault statute, and the range of conduct proscribed, the statutory language does not and could not specify each prohibited act.

***Commonwealth v. Provenzano***, 50 A.3d 148, 153 (Pa. Super. 2012)

(citation omitted).

As to harassment, a person "commits the crime of harassment when,

with intent to harass, annoy or alarm another, the person:  [ ] strikes, shoves,

kicks **or otherwise subjects the other person to physical contact**, or

attempts or threatens to do the same[.]"  18 Pa.C.S.A. § 2709(a)(1)

(emphasis added).  "An intent to harass may be inferred from the totality of

the circumstances." ***Commonwealth v. Cox***, 72 A.3d 719, 721 (Pa. Super.

2013).

Appellant argues the evidence was insufficient to sustain his indecent

assault conviction because, during cross-examination, A.C. acknowledged it

would be possible for someone grabbing the seat in front of him when standing

up to inadvertently touch her.[8]  N.T., 11/27/19, at 79.  Appellant asserts his

contact with A.C.'s breast was "at least as likely [inadvertent] as it being

deliberate."  Appellant's Brief at 51.  He maintains:

> Given this testimony, the possibility that the contact between
> Appellant and the complainant was inadvertent was at least as
> likely as it being deliberate.  If accidental, the contact was not
> made with any deliberate intent, including making that contact
> "for the purpose of arousing sexual desire in the person or the
> complainant."  18 Pa.C.S.A. § 3126(a).  Because the evidence was
> at least consistent with an inadvertent touching as it was with a
> deliberate touching, then pursuant to the caselaw cited above, the
> evidence was insufficient to convict Appellant of indecent assault.

***Id.*** at 51-52.  Appellant makes this same argument regarding his claim that

the evidence was insufficient to sustain his conviction for harassment.  ***Id.*** at

53.

---

[8] In his brief, Appellant does not provide the context surrounding A.C.'s answer.  When initially asked if a person grabbing the bus seat could accidentally touch her breast, A.C. replied, "No."  N.T., 11/27/19, at 78.  In response to the question concerning a person grabbing the seat to help himself up, A.C. said he would touch her neck.  ***Id.*** at 79.  When asked if the person were to grab the seat further down, A.C. said he would touch her side.  ***Id.*** A.C. never testified that a man, "grab[bing] the side of the chair, in order to stand up," could possibly touch her breast, only that he could possibly "touch" her.  ***Id.***

Both sufficiency claims are waived. This Court has advised, "[i]n order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013). "Such specificity is of particular importance in cases where . . . the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Id.* Failure to identify what specific elements the Commonwealth failed to prove at trial in a 1925(b) statement renders an appellant's sufficiency of the evidence claim waived for appellate review. *Id.*

We have further explained that "the Pa.R.A.P. 1925(b) statement must be sufficiently 'concise' and 'coherent' such that the trial court judge may be able to identify the issues to be raised on appeal[.]" *Commonwealth v. Vurimindi*, 200 A.3d 1031, 1038 (Pa. Super. 2018), *appeal denied*, 217 A.3d 793 (Pa. 2019), *cert. denied*, 140 S.Ct. 1147 (2020). "[A] Rule 1925(b) statement is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the party plans to raise on appeal." *Id.*

Instantly, Appellant's 1925(b) statement does not specify which element of harassment the Commonwealth failed to prove. Statement of Errors Complained of on Appeal, 7/14/20, at unnumbered page 2. While

Appellant does specify, with regard to indecent assault, that he is challenging the "purpose of arousing sexual desire" element, he does not express in his 1925(b) statement — as he does in his brief — that his claim is based on A.C.'s one word answer to a question asked on cross-examination. ***Id.***; ***see also*** Appellant's Brief at 51; N.T., 11/27/19, at 79. Thus, the trial court did not know Appellant's sufficiency challenge was based on A.C.'s isolated testimony that it was "possible" Appellant touched her accidentally, and therefore the trial court did not address the claim in its 1925(a) opinion. ***See*** Trial Court Opinion, 8/13/20, at 10-12. Accordingly, Appellant's third and fourth issues are waived. ***Vurimindi***, 200 A.3d at 1038.

Even if not waived, the issues do not merit relief. The trial court explained:

> A.C. testified that Appellant grabbed and pressed her breast with his hand and without her consent. This Court deemed A.C.'s testimony to be credible, particularly in view of her prompt complaints to the bus driver and her mother. It clearly is inferable from the circumstances described that Appellant indecently contacted the minors for the "purpose of arousing [his] sexual desire," and his appeal on this ground is meritless.
>
> * * *
>
> A.C.'s testimony established that Appellant subjected her to unwanted physical contact when he grabbed her breast. The evidence therefore easily sustains Appellant's convictions of harassment under Section 2709(a)(1), and his appeal on this ground is meritless.

Trial Court Opinion, 8/13/20, at 11-12.

The trial court, sitting as the fact-finder, rejected the possibility that Appellant "accidentally" reached around the seat and A.C.'s arm and body, inadvertently pressing his fingers into her breast.[9] To the contrary, the court credited A.C.'s testimony, and it is well-settled that "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005) (citations omitted). Further, the above testimony is sufficient to sustain a conviction for both indecent assault and harassment. *See Commonwealth v. Smith*, 863 A.2d 1172, 1177 (Pa. Super. 2004) (holding touching of breast and vagina sufficient to establish indecent contact for purpose of arousing or gratifying sexual desire); *Commonwealth v. McClintic*, 851 A.2d 214 (Pa. Super. 2004), *rev'd on other grounds*, 909 A.2d 1241 (Pa. 2006) (holding burglar's intentional grab and pinch of victim's breast was sufficient for fact-finder to conclude touching was for the purpose of sexual gratification). Thus, in the absence of waiver, Appellant's third and fourth issues would not merit relief.

Judgment of sentence affirmed.

---

[9] Again, Appellant cites A.C.'s testimony out of context. A.C. testified she felt a hand on her breast and said, "Excuse me", after which Appellant removed his hand, stared at her, and pulled the cord to exit. N.T., 11/17/19, at 61-62.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/7/21