J-A10016-22

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: T.C.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.B.R., MOTHER | |
| | No. 1511 MDA 2021 |

Appeal from the Order Entered October 27, 2021,
in the Court of Common Pleas of Cumberland County,
Juvenile Division at No(s): CP-21-DP-0000034-2017.

| | |
|---|---|
| IN RE: ADOPTION OF: T.C.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.B.R., MOTHER | |
| | No. 1514 MDA 2021 |

Appeal from the Decree Entered October 21, 2021,
in the Court of Common Pleas of Cumberland County,
Orphans' Court at No(s): 018-ADOPT-2021.

BEFORE: PANELLA, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: JUNE 13, 2022**

In this consolidated matter, B.B.R. (Mother) appeals various aspects of

the orphans' court decision to involuntary terminate her parental rights to her

four-year-old son, T.C.R. (the Child), pursuant to the Adoption Act. **See** 23

Pa.C.S.A. § 2511(a)(2), (5), and (b).[1]  Mother also appeals the decision to change the goal of the dependency proceedings from reunification to adoption, pursuant to the Juvenile Act. *See* 42 Pa.C.S.A. § 6351(f). After careful review, we affirm.

The record discloses the following procedural and factual history:  The Agency's involvement with the family began in 2016 after a report that Mother was in the emergency room, heavily intoxicated, and 16 weeks pregnant with the Child.  The Child tested positive for alcohol at birth in February 2017 and was removed from Mother's care in March 2017.

Between 2017 and 2020, the Child was placed with the foster family on three separate occasions due to Mother's alcohol abuse, her mental health, and the possibility of domestic violence in the home.  Specifically, the Child was placed from March 2017 until July 2017 (approximately 5 months); November 2017 until February 2018 (approximately 4 months); March 2018 until March 2019 (approximately 12 months).  By August 2019, Mother progressed to where the juvenile court terminated the Child's dependency.

Although the dependency case was closed, the Child's foster family remained in contact with the family.  The foster mother cared for the Child overnight at least once per week, and sometimes for longer stints during Mother's relapses. Between the dependency closure in August 2019 until June 2020, Father informed the foster mother that Mother had relapsed three

---

[1] The orphans' court also terminated the rights of K.R. (Father), who did not appeal.

times. On two occasions, Father informed the foster mother they could not care for the Child, because Mother was having a mental health crisis. In June 2020, Father texted the foster mother to say he was "done" and that "God didn't mean for him to be a father." *See* N.T. (10/7/21) at 83-84. The Agency intervened and imposed a safety plan where Mother received in-patient therapy for three weeks.

In October 2020, Father pleaded guilty to a series of offenses, including indecent assault of a person less than 16 years of age, all related to contact with his daughter from a previous marriage. His probation conditions did not allow him to have contact with minors, including the Child, or with the foster parents.

The final removal occurred in November 2020 when Mother relapsed and was arrested for assaulting Father. Around this time, Mother drank two bottles of vodka, passed out, and was taken to the hospital where she had to give birth *via* Caesarean section due to her excessive consumption of alcohol. The newborn sibling was diagnosed with fetal alcohol syndrome. Mother entered a residential treatment facility. The Child was adjudicated dependent in December 2020, and he was placed with the same foster family that cared for him during his previous placements. The foster family intends to adopt the Child. The Child's younger sibling was also placed with the foster family.

The juvenile court imposed a series of family service plan goals to facilitate Mother's reunification with the Child. The goals included: parenting; drug and alcohol treatment; mental health treatment; housing; and

cooperation with the Agency. In its Rule 1925(a) opinion, the court outlined Mother's substantial compliance with these goals. *See* Trial Court Opinion (T.C.O.), 12/20/21 at 6-8.

The Agency petitioned for a goal change hearing in March 2021 and for the involuntary termination of Mother's rights in August 2021. The orphans' court held a remote hearing on October 7, 2021, in accordance with the Covid-19 protocols. The court appointed the Child legal counsel, pursuant to Section 2313(a) of the Adoption Act. The Child's counsel represented that the Child was too young to state his preferred outcome. The court also appointed the a guardian *ad litem* (GAL) to represent the Child's best interests. The GAL was new to the case, having only taken over in August 2021 (*i.e.*, approximately four months prior to the termination hearing). The GAL represented that termination was in the Child's best interests.

The orphans' court subsequently granted the Agency's petitions under 23 Pa.C.S.A. § 2511(a)(2), (5) and (b). Mother appealed both the termination decree and the goal change order. She presents the following seven issues, which we have re-ordered for ease of disposition:

1. [Did] the trial court abuse[] its discretion and commit[] an error of law by accepting the opinion of the guardian *ad litem* (GAL), the opinion of the Child's court-appointed attorney, and the opinion of a representative from [the Agency] supporting termination of Mother's parental rights under circumstances where none of these witnesses ever witnessed Mother's relationship with T.C.R., had never been in Mother's home, and, with respect to the

attorney and the GAL had never even met Mother before expressing their opinion at trial?

2. Did the trial court commit an error of law and abuse its discretion by considering any statements or actions of T.C.R. that occurred when T.C.R. was solely in the foster/adoptive Mother's presence?

3. Did the trial court commit an error of law and an abuse of discretion by giving little or no weight to mother's witnesses under circumstances where the court directed that their testimony be expedited?

4. Was there insufficient evidentiary support for the trial court's orders terminating Mother's parental rights and changing the permanency placement goal to adoption, thus causing an abuse of discretion?

5. Did the trial court commit an error of law and an abuse of discretion in failing to take into consideration and provide sufficient weight to Mother's current circumstances in addressing her mental health and addiction illnesses?

6. Did the trial court commit an error of law and an abuse of discretion by accepting the opinions of principal witnesses as to the psychological and emotional impact of the termination of parental rights upon T.C.R., without directing the intervention of a professional or expert to provide testimony in this regard?

7. Did the trial court commit an error of law and an abuse of discretion in failing to require sufficient evidence regarding the emotional and psychological bond between T.C.R. and his brother and his half-brother?

Mother's Brief at 15-17 (re-ordered).[2]

_____

[2] Mother initially raised 20 issues in her concise statement of errors complained of on appeal. We caution Mother's counsel that a **concise** statement, which is too vague or voluminous could lead to waiver. ***See, e.g.,***
*(Footnote Continued Next Page)*

We begin with our well-settled standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

In her first appellate issue, Mother argues the orphans' court erred when it accepted the opinions of: 1) the Agency's primary witness; 2) the Child's court-appointed attorney; and 3) the Child's GAL.  Mother reasons these "opinions" should be discounted because none of these individuals witnessed Mother's interaction with the Child.  **See generally** Mother's Brief at 33-37.[3]

_____

*Commonwealth v. Vurimindi*, 200 A.3d 1031 (Pa. Super. 2018). Waiver is not appropriate in this instance, because the orphans' court thoroughly addressed each of Mother's appellate issues, and our review was not impeded. *But see Commonwealth v. Heggins*, 809 A.2d 908, 911 (Pa. Super. 2002) ("Even if the trial court correctly guesses the issues [an] appellant raises on appeal and writes an opinion pursuant to that supposition the issues [may] be waived.").

[3] We note Mother's use of the term "opinions" to describe the testimony of the Agency witness, and to describe the legal positions of the Child's counsel and GAL.  On this issue, and at various times throughout her brief, Mother seemingly conflates the sufficiency of the evidence with the weight of the

*(Footnote Continued Next Page)*

We begin with the testimony of the Agency's witness. At the time of the termination hearing, the caseworker assigned to Mother's case had left her employment with the Agency. Because the caseworker was unavailable to testify, the Agency called the case supervisor who had been the supervisor attached to the case. The supervisor was able to testify about the Mother's goals and the case history. Mother argues the court erred when accepting this testimony, because the supervisor had no personal knowledge of the case.

In its Rule 1925(a) opinion, the court noted: "To the extent that [Mother] had specific objections to a witness's lack of personal knowledge about particular subjects, we heard those objections and ruled on those objections [in favor of Mother]." **See** T.C.O. at 19. Indeed, the court cites two specific examples where Mother's objections were sustained. **Id.** at 19, n.79. Mother, by contrast, cites no examples of evidentiary rulings where she was prejudiced by the case supervisor's lack of personal knowledge. Moreover, Mother cites no relevant legal authorities to support her claim, in apparent circumvention of our Rules of Appellate Procedure. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal"); **see also** Pa.R.A.P. 2119(e) ("Statement of place of raising or preservation of issues"); **and see** Pa.R.A.P. 2101 ("Conformance

_____

evidence. We clarify, as best we can, what precisely Mother means to challenge. **See, e.g., Commonwealth v. Dowling**, 778 A.2d 683, 686 (Pa. Super. 2001) ("When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review.").

Insofar as this first issue relates to the Child's legal counsel and GAL, it is apparent that Mother means to challenge the propriety of this representation.

- 7 -

with Requirements."). We discern no error or abuse of discretion as to this contention. To the extent Mother argues that the court's decision was based on insufficient evidence or that the supervisor's testimony should have been afforded less weight, we address those claims in our discussion of Mother's fourth and fifth issues.

Mother's claims regarding the Child's legal counsel and the GAL implicate 23 Pa.C.S.A. § 2313(a) ("Representation").[4] The Adoption Act mandates that children have a statutory right to counsel in contested involuntary termination proceedings:

> The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. […].

23 Pa.C.S.A. § 2313(a).

This statue has been the source of considerable litigation in recent years. In a fractured decision, our Supreme Court held in ***In re Adoption of L.B.M.***, 161 A.3d 172, 180 (Pa. 2017), that, in a contested termination proceeding, the orphans' court must appoint counsel who is directed by the child to represent the child's "legal interests." This rule is commonly referred to as the Section 2313(a) mandate. A child's legal interests are synonymous

---

[4] We note that whether a child has been properly afforded counsel under Section 2313(a) is a mixed question of fact and law, which is also subject to a review for an abuse of discretion. ***In re P.G.F.***, 247 A.3d 955, 961 n.4 (Pa. 2021).

with the child's "preferred outcome" of the proceeding. *L.B.M.*, 161 A.3d at 174-75.

More recently, our Supreme Court addressed the contours of that representation. *See In re P.G.F.*, 247 A.3d 955 (Pa. 2021). In *P.G.F.* the Court explained that any attorney acting as a child's legal counsel must, at a minimum, *attempt* to ascertain the child's preference and advocate on the child's behalf. *Id.* at 966 (emphasis added). *P.G.F.* involved a mother and a step-father seeking to terminate the rights of the biological father. The child's attorney investigated the child's preferred outcome, but the attorney decided not to inform the child of the exact meaning of the termination proceedings, because doing so would reveal to the child that his step-father was not his actual biological-father. The attorney believed that pressing the child about his preferred outcome would cause confusion, anxiety, and emotional trauma. *Id.* at 968.

The Supreme Court determined that the child's attorney fulfilled the Section 2313(a) mandate when she attempted to – but could not – elicit the child's preferred outcome. The Court observed that discerning a child's preference is necessarily a fact-intensive and nuanced process, based upon an attorney's observations and interactions with the child. *Id.* at 966. The Court reasoned that children fall within a wide range of ages, maturity levels, and emotional capacities that all factor into a child's ability to express a preference. *Id.* The Court held the orphans' court should afford "significant deference" to counsel's approach in discerning a child's preference. In turn,

the appellate court should give "substantial deference" to the orphans' court determination of whether the attorney fulfilled the Section 2313(a) mandate. *Id.* at 967.

Returning to the instant matter, the Child's legal counsel represented to the court that he was unable to ascertain the Child's position on termination, because the four-year-old Child was too young. *See* N.T. at 183-184. Counsel explained that the Child felt comfortable with the foster family and looked to them for support when in a strange environment. *Id.* at 184. Counsel also noted that the Child was "picking up on" the fact that Mother also turned to the foster family for support. *Id.* The Child refers to Mother and his foster mother as "mommy [B.]" and "mommy [J.]," respectively. *Id.* at 183. Counsel averred that the Child would say things like "I want to live here forever" wherever he happened to be having a particularly good time, e.g., when he was at the beach. *Id.* at 183-84. Counsel concluded his report to the court by stating: "But with respect to his preference, I don't believe he can give a preference as to where he would like to be, so I defer to the [GAL] with the recommendation." *Id.* at 184.

On appeal, Mother evidently agrees with the legal counsel's assessment that the Child was too young to articulate a preferred outcome. According to Mother, the error occurred when the legal counsel subsequently proceeded to express a position. Mother argues that counsel's position was improper, because counsel had never met Mother. *See* Mother's Brief at 35. Mother concludes the court erred for accepting this position.

In its Rule 1925(a) opinion, the orphans' court noted that the legal counsel's report did not take a position in favor or disfavor of termination. **See** T.C.O. at 15-16. The court understood counsel's report to mean that the Child was unable to give a preference, that the Child was quick to tell whomever he was with that he was happy there. **Id.**

We agree with the assessment of the orphans' court. Contrary to Mother's characterization, counsel took no position regarding whether Mother's rights should be terminated. Counsel merely articulated, for the court's benefit, his approach in attempting to discern the Child's preferred outcome. Moreover, we are not convinced by Mother's argument that counsel had to meet with Mother. The legal counsel's representation is **directed by the Child**, based on the Child's preference. **L.B.M.**, 161 A.3d at 180. As we noted above, the orphans' court should give significant deference to counsel's approach. **P.G.F.**, 247 A.3d. at 966-67. We, in turn, must give "substantial deference" to the orphans' court determination. Mother's claim regarding the propriety of counsel's representation is without merit.

Next, we turn to the final aspect of Mother's first appellate issue, namely that the orphans' court erred by accepting the GAL's recommendation. **See** Mother's Brief at 35-37. Mother argues the court should not have relied on the GAL's recommendation, because the GAL failed to interview Mother in apparent circumvention of the Rules of Juvenile Court Procedure and the

Juvenile Act.[5] Mother concludes that the GAL's failure to perform the required investigation was an error of law. ***Id.*** at 37.

Mother's claim presents a novel question. The issue is not whether the GAL satisfied her duty as legal counsel under Section 2313(a). ***See, e.g., In re T.S.***, 192 A.3d 1080, 1090 (Pa. 2018) (holding that a GAL may fulfill the Section 2313(a) mandate so long as the child's best interests do not conflict with the child's legal interests). Here, the Child was appointed separate legal counsel, who fulfilled the mandate when he attempted to ascertain the child's preferred outcome. The question now is what obligation, if any, does a GAL have when that GAL is appointed solely to represent the Child's best interests during a contested termination hearing.

On one hand, it appears that a GAL's participation in a termination proceeding in not required. ***See L.B.M.***, 161 A.3d at 181;[6] ***see also In re:***

---

[5] Rule 1154(5) provides, ***inter alia***, that a GAL "***shall:*** (5) Interview potential witnesses, including the child's guardians, caretakers, and foster parents, examine and cross-examine witnesses, and present witnesses and evidence necessary to protect the best interests of the child." Pa.R.J.C.P. 1154(5) (emphasis added). The Juvenile Act outlines substantially the same responsibilities as those listed in the Juvenile Rules of Procedure, with a notable difference. The Juvenile Act explicitly provides that the GAL shall: "(5) Interview potential witnesses, ***including the child's parents***, caretakers, and foster parents…" 42 Pa.C.S.A. § 6311(b)(5) (emphasis).

[6] In ***L.B.M.***'s fractured decision, only a three-justice plurality joined Part II(B) of the decision. Part II(B) notes, in passing, that "the Adoption Act does not require the appointment of a GAL[.]" ***L.B.M.***, 161 A.3d at 181. Chief Justice Saylor and Justice Todd did not join Part II(B), but only to opine that they believed that a GAL could represent a child's ***legal*** interests, so long as the child's legal interests and best interests do not conflict. ***Id.*** at 183-1184 (Chief Justice Saylor – Concurring) (emphasis added).

***Adoption of C.J.A.***, 204 A.3d 496, 501-02 (Pa. Super. 2019).[7]  On the other hand, once a GAL has been appointed to represent a child's best interests during a termination proceeding, it might follow that the GAL would be charged with the same obligations as they would during a dependency proceeding (including the obligation to interview the parent). ***See T.S.***, 192 A.3d at 1089-90.[8]  Then again, if the GAL has statutory obligations, it stands to reason that the courts might have to afford the GAL the same sort of the deference afforded to legal counsel, when determining whether those obligations have been fulfilled. ***See P.G.F.***, 247 A.3d at 967.

This precise question appears to be a matter of first impression, but this panel cannot be the one to answer it.  We do not reach this issue, because Mother failed to raise it with the orphans' court. ***See*** Pa.R.A.P. 302(a).  The only mention of the GAL not fulfilling her obligations was during Mother's direct examination, when she testified that the GAL was not at a family service plan meeting. ***See*** N.T., at 134.  To that end, we note that the GAL averred she "reviewed all the records" and "had extensive conversations with quite a large number of people about this case." ***Id.*** at 191.  But Mother did not object

_____

[7] In ***C.J.A.***, the orphan's court did not appoint a GAL at all; rather, the court only appointed legal counsel under Section 2313(a).

[8] In ***T.S.,*** the Supreme Court consulted the Juvenile Act – specifically, 42 Pa.C.S.A. § 6311(b)– to understand the contours of a GAL's obligation in a termination proceeding, where the Adoption Act provided no clear answer.

- 13 -

before or after the GAL's recommendation, or otherwise raise the propriety of the GAL's representation at the termination proceeding.[9]

In her second appellate issue, Mother argues the orphans' court erred when it considered the statements the Child made to the court during an *in camera* interview. Mother claims these statements should be discounted, because they were made in the presence of the foster mother. **See** Mother's Brief at 39.

At the termination proceeding, the parties agreed that the court should speak with the Child, particularly because the legal counsel averred that he could not ascertain the Child's preferred outcome. **See** N.T. at 180, 182-83. The parties agreed that the court should speak to the Child alone, without the intimidating presence of five attorneys. The plan was that foster mother would initially be present during the interview (conducted *via* Zoom) and then leave once the Child felt comfortable. But the Child was too shy to engage with the court, so the foster mother never left. During the short interview, the court gently coaxed some answers from the Child, who stated that he had "two

---

[9] We note that our Supreme Court authorized *sua sponte* review of certain issues regarding Section 2313(a) representation; *i.e.*, courts may "evaluate (1) whether the orphans' court appointed counsel to represent the legal interests of the children and (2) if the appointed counsel also serves as GAL, whether the orphans' court determined that the child's best interests and legal interests did not conflict." **In re Adoption of K.M.G.**, 240 A.3d 1218, 1236 (Pa. 2020). We refrain from expanding this holding to mean that we may conduct a *sua sponte* review to determine the adequacy of the GAL's best interests representation; such an inquiry would not be a "binary" question, but a "fact-intensive, nuanced determination…not well-suited for *sua sponte* appellate review." **K.M.G.** 240 A.3d at 1238.

mommies" and that he liked the foster mother best. However, the court terminated the interview after concluding that the Child was not competent to testify. *See* T.C.O. at 16-17; *see also* N.T. at 185-190. Thus, contrary to Mother's argument on appeal, the court did not consider the Child's statements at all, much less weigh them against Mother. Mother's second issue is without merit.

In her third appellate issue, Mother argues the orphans' court erred by giving little or no weight to Mother's witnesses, where the court directed that their testimony be expedited. *See* Mother's Brief at 43.

At the mid-point of the termination proceeding, the orphans' court informed the parties that it had other proceedings scheduled for that afternoon, albeit short ones. The court asked whether the parties wished to proceed through the lunch hour and attempt to finish the hearing that day, or whether the parties wished for a continuance until the following Thursday. *See* N.T. at 91. Counsel for the Agency was unavailable during the next week, so the hearing proceeded without objection, and the court took short recesses to tend to its other matters. Ultimately, Mother was able to call her each of desired witnesses and presented her case in full. At no point did Mother object to the court's procedure.

On appeal, Mother provides a singular citation to the record to argue the court erred. *See* Mother's Brief at 43; *see also* N.T. at 111. Mother's counsel sought to elicit testimony from Mother's AA sponsor about the sponsor's experience with alcoholism. The court directed counsel to move on, not

because of time constraints, but because the court was familiar with alcoholism and found the testimony to be irrelevant to Mother's case. We conclude Mother's third claim is meritless. Insofar as Mother means to present this issue as a weight claim, we address that matter below.

We turn now to the portion of Mother's appeal involving the substantive termination decision. Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

*In re C.M.K.*, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Clear and convincing evidence is evidence that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (quoting *Matter of Adoption Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)). We add that we may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d at 1201. Importantly, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

We address the orphans' court determinations under Section 2511(a)(2). That section provides:

> **(a)** **General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> [...]
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2).

To satisfy the requirements of Section 2511(a)(2), the moving party must prove "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *C.M.K.*, 203 A.3d at 262 (citation omitted).

Mother's fourth and fifth appellate issues both concern the third element of the Section 2511(a)(2) analysis. Mother cites to her most recent stint of sobriety to argue that the Agency failed to demonstrate that she was unable to remedy the conditions which led to the Child's removal. *See* Mother's Brief at 32, 45-46. Mother claims that she has been sober for 14 months and had consistently met her service plan goals. However, that number, though laudable, is misrepresentative because it includes time spent in an in-patient

treatment program, as well as the four months between the termination decision and the filing of the appellate brief. In October 2021, when the orphans' court held the termination proceeding, Mother had only been out of in-patient care and sober for approximately six months.

This important discrepancy goes to the heart of the court's decision:

> [T]his recent period of sobriety follows a long and tortured history of [Mother's] relapses when the Agency is not closely monitoring [Mother's] progress. Just prior to this period of sobriety, [Mother] had several serious relapses with accompanying domestic violence instigated by [Mother] in the presence of [Child], prompting [the] removal of the Child, calls on the foster parents to care for the Child under the Agency's radar, police intervention, passing out from intoxication in the whole while caring for the [Child], trips to the emergency room heavily intoxicated, scheduled delivery due to heavy intoxication, or, finally, a four-month period of in-patient treatment. As a result of this instability, the Child was removed from [Mother's] care formally four times and spent over 30 out of the 55 months of his life in the Agency's custody, placed with his foster parents. Adding in the days that [Father] informally called on the foster parents to retrieve the Child while he dealt with [Mother's] intoxication in the home, approximately another month may be added. If not for the presence of the [Father] to remove the Child from [Mother's] care himself, [the orphans' court] cannot speculate what might have occurred. At this time, however, [Father] is not permitted to have contact with the Child or communicate with the foster family pursuant to his probation conditions, and [the court] has since terminated his parental rights.
>
> [The court does] not doubt that [Mother] loves the Child, and we are confident in the accuracy of the testimony [the court] heard from her and those who testified on her behalf that [Mother] is affectionate and loving at her visits with the Child and that she is currently engaged in her sobriety efforts. [Mother's] history of extreme relapses and unconsciousness while caring for the Child full-time and the recentness of her return home from four months of in-

patient treatment just this year, however, do not instill confidence that [Mother] can remedy the conditions leading to her incapacity to parent the Child, least of all without the help of an in-home partner to supervise full-time care or the continued intervention of the foster parents. [...] Even with [Father] in the home, he had previously expressed that he felt he could not protect the Child from [Mother].

We are sympathetic to [Mother's] history of alcohol addiction and commend her for her current sobriety. [Mother's] pattern of relapses while caring for the Child under the stress of full-time parenting, the extreme nature of the previous circumstances prompting the Child's removal from the home, and the need for [Mother] to have the safety net and monitoring of other adults to remove the Child when necessary lead [the court] to find that the Agency has met its burden in proving Section 2511(a)(2). In short, [Mother] gets sober, meets her goals for a period of time, relapses terribly, and repeats. Indeed, we have witnessed [the] same during our review of the case. [The court] gave the Child back and terminated dependency despite previous relapses in the hopes stability had been found. It has not, and the Child at long last deserves better stability.

T.C.O. at 12-13 (citation to legal authority omitted).

Throughout her brief, Mother argues that the orphans' court did not place fair weight on the testimony and evidence favorable to Mother's case. But we emphasize that with termination cases, the record often supports the opposite result. *See T.S.M.*, 71 A.3d at 267; *see also, e.g., In re Adoption of T.B.B.*, 835 A.2d 397, 394 (Pa. Super. 2003). Recently, our Supreme Court reaffirmed that the Superior Court is not in a position to make "close calls" when reviewing appeals from termination decisions. "When a trial court makes a 'close call' in a fact-intensive case involving...the termination of parental rights, the appellate court should review the record for an abuse of discretion and for whether the evidence supports that trial court's conclusions;

the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court." ***Interest of S.K.L.R.***, 256 A.3d 1108, 1124 (Pa. 2021). To that end, we observe that the orphans' court is "free to believe, all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." ***In re M.G. & J.G.***, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

Instantly, the record supports the orphans' court decision that Mother cannot remedy the causes that lead to the Child's removal. We are particularly persuaded by the fact that the court had previously returned the Child to Mother's care and closed the dependency case after Mother demonstrated a period of sobriety. But without Agency supports in place, Mother relapsed and the Child had to be removed for a fourth time. Mother attributed that relapse to the stresses of her pregnancy with the Child's younger brother. She claims that the situation will be different now, because she underwent surgery to have her tubes tied, and because she has since received mental health treatment. ***See*** Mother's Brief at 20. However, the orphans' court was free to discount this testimony as evidence that Mother will not relapse again. Mother's fourth and fifth appellate issues are without merit.

Finally, we turn to the second portion of the bifurcated termination analysis under Section 2511(b):

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare

- 20 -

of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(b).

This Court has explained that:

[S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. *See C.M.K.*, 203 A.2d at 264 (citation omitted); *see also K.Z.S.*, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). Moreover, the court is not required to use expert

- 21 -

testimony to resolve the bond analysis. *In re Z.P.*, 994 A.2d at 1121 (citing *In re K.K.R.-S.*, 958 A.2d 529, 533 (Pa. Super. 2008)). And a parent's own feeling of love and affection for the child does not preclude the termination. *Id.* Finally, we emphasize that "[w]hile a parent's emotional bond with her and/or her child is a major aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

In her sixth appellate issue, Mother alleges the orphans' court erred when it relied on the testimony of lay witnesses, including the foster mother, to resolve the question of whether termination would be appropriate under 23 Pa.C.S.A.§ 2511(b). *See* Mother's Brief at 40. Mother reasons that the court "had an obligation to secure an expert opinion before entering its order terminating Mother's parental rights or, in the alternative, should have denied the petition." *Id.* at 41.

For support, Mother relies on our Supreme Court's decision in *In re E.M.*, 620 A.2d 481 (Pa. 1993). In that case, the local agency called an expert witness – a psychologist – to testify about the bond between the foster mother and the children. Critically, the psychologist did not assess the bond between the children and their mother. *E.M.*, 620 A.2d at 484-85. The High Court remanded to allow for further exploration about the parental bond. Essential to that holding, however, was the fact that the *court* did not analyze the bond between the mother and the children or the effect that severance of that bond

would have on the children. *See E.M.*, 620 A.2d at 485 (emphasis added). Thus, Mother's reliance is misplaced. The court is not required to use expert testimony when conducting a bond analysis. *Z.P.*, 994 A.2d at 1121. Section 2511(b) does not require a *formal* bonding evaluation. *Id.* (emphasis added).

Here, the orphans' court properly recognized its obligation to consider the effects that termination would have on the parental bond. *See* T.C.O. at 13-14. The court acknowledged that the Child loves Mother, but found that the Child's confusion and uncertainty were indicators of his greater need for permanency and stability. *Id.* at 14. The court also noted that the Child was bonded to his foster family, with whom the Child spent most of his short life. The court was right to make this observation. "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. *T.S.M.*, 71 A.3d at 267-68. And we reiterate that the bond is only one aspect – albeit a major aspect – of the Section 2511(b) analysis. *In re N.A.M., supra.* We discern no error.

In her seventh and last appellate issue, Mother alleges the orphans' court erred when it did not consider the bond between the Child and his siblings. *See* Mother's Brief at 37-38.[10] The Child's older brother resides with Mother, and the Child's infant younger brother is placed with the foster family. The trial court recognized the close relationship that Child has with both

---

[10] We note that Mother provides no citation to the record, nor to relevant legal authorities, on this point – an apparent contravention of our Rules of Appellate Procedure. *See generally* Pa.R.A.P. 2119(e); *see also* Pa.R.A.P. 2101.

siblings, but ultimately determined that the Child's relationship with his older brother did not preclude the termination of Mother's rights.  *See* T.C.O. at 22.

We are mindful that, when possible, the preservation of the family is the desired outcome.  However, "[t]he goal of preserving the family unit cannot be elevated above all other factors when considering the best interests of the child[], but must be weighed in conjunction with other factors." *In re K.D.*, 144 A.3d 145, 153 (Pa. Super. 2016) (citation omitted).  Instantly, the court properly considered the effect termination might have on the sibling relationship and weighed the same in conjunction with the rest of the termination analysis.  We discern no error, nor abuse of discretion.

As a final matter, we note that Mother has all but abandoned her challenge to the court's goal change decision.  But even if we concluded that Mother preserved this claim, it would be moot given our decision to affirm the termination. *See Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.") (citation omitted).

In sum, we discern no error or abuse of discretion when the orphans' court granted the Agency's petition to terminate Mother's rights under Section 2511(a)(2) and (b).  The Child's legal counsel fulfilled the Section 2313(a) mandate.  Mother failed to preserve her claim as to the propriety of the GAL's representation. The orphans' court procedure was proper.  Mother abandoned

her challenge to the court's goal change decision; alternatively, the challenge is moot.[11]

Decree affirmed. Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/13/2022

---

[11] We echo the court's hope that Mother continues on her path to sobriety, and we applaud the foster family's intention to allow Mother to have contact with the Child, as the foster family deems appropriate.