J-S33017-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| NICHOLAS F. BAGINSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| COURTNEY K. BAGINSKI | : | No. 650 MDA 2024 |

Appeal from the Order Entered April 9, 2024
In the Court of Common Pleas of York County Civil Division at No(s):
2016-FC-002322-03

BEFORE: OLSON, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED NOVEMBER 05, 2024**

Nicholas F. Baginski (Father), *pro se*, appeals the order issued by the York County Court of Common Pleas, which awarded Courtney K. Baginski[1] (Mother) sole legal and primary physical custody of the parties' 14-year-old daughter, G.B., and 12-year-old son, N.B. (the Children), pursuant to the Child Custody Act. After review, we affirm.

Neither Father, nor the trial court, provided a detailed background of the parties' history; Mother did not submit an Appellee Brief. That notwithstanding, the record indicates a history of acrimony and litigation. Initial custody litigation began in early 2017, but by March 2017 the parties reached an agreement. They would share legal custody of the Children, and

_____

[1] Mother is now known as Courtney Beere.

Mother would exercise primary physical custody of the Children, subject to Father's partial custody, which he would exercise on alternating weekends.

The parties' cooperation did not last, however. By the end of 2017, the parties had filed for contempt and custody modification. Litigation continued until the parties reached another agreement in April 2018. Legal custody remained shared, Mother retained primary physical custody, but Father's partial custody increased to every weekend. A month later, in May 2018, Mother filed for custody modification. The trial court ultimately held a custody hearing in December 2019. The court left the custody arrangement largely the same, except the court provided Mother with one weekend per month.

In December 2022, two years later, Father filed for modification and contempt. Over the next year, the trial court issued several continuances and various interim orders. Finally, the parties appeared for a hearing, which took place over two dates: March 21 and 25, 2024. The court set forth its findings on the record. **See generally** Opinion In Support of Final Order of Custody, 3/27/24, at 1-19. The court issued a final custody order on April 5, 2024. Therein, the court awarded Mother sole legal custody and primary physical custody. Father was awarded partial custody on alternating weekends. This schedule continued into the summer, except that each parent was entitled to two nonconsecutive weeks of custody. The court granted Father's petition for contempt in part. Specifically, the court found that Mother withheld custody without cause. The court awarded Father an additional week of summer custody.

Father timely filed this appeal. He presents the following seven issues, which we state *verbatim*:

1. Did the trial court abuse its discretion by placing reliance on false testimony witnesses [Mother, Stepfather], and [custody evaluator] Debra Salem without corroborating such testimony. Father never entered into any agreement other than the 2019 Court Custody Order. [Mother] lied and stated that Father[] agreed to the order, but failed to sign the order. Mother was in deliberate contempt of court after [Father] continuously reminded Mother through text that he did not sign any new order and made demand for the Children. Mother continuously took Children out of school to avoid Father[] picking them up on his scheduled custody time causing truancy for the Children. The trial court ignored these proven facts.

2. Did the trial court err[] by not taking into consideration cogent and sufficient evidence produced by [Father]. The trial court ignored facts that Debra Salem did not interview all parties equally. The trial court did not allow [Father's] proof of bias and threats from Ms. Salem to [Father].

3. Did the trial court err[] by making a decision based on the maturity of a 12-year-old when he is in fact 11 years old.

4. Did the trial court err[] in upholding their oath to the U.S. Constitution and Amendments 1,5,9,14 violating the rights of [Father] in removing his Children from the shared custody time, decision making abilities for Children. Allowed biased testimony by with full understanding of Debra Salems' unprofessional conduct, not reading entire report, or hearing the threats she made to [Father] and made good on those threats by recommending mother for custody.

5. Did the trial court promote and support parental alienation by [] Mother, through admission of contempt in the court order whereby Mother purposefully and willfully withheld the Children from

- 3 -

[Father] without just cause and against the trial court's order. Mother being found in contempt should have immediately been remedied her unfit and full custody awarded to [Father], instead trial court erred in upholding the law.

6. Did the trial court allow biased testimony from [Penn Township Detective] Nathaniel Behrendt, stating that he did not speak directly with the Children regarding the naked photographs repeatedly taken of them by them [Mother], the violent physical abuse of throwing the Child to the ground, and requiring the Child to stand naked in front [Mother] for her observation, and allow his testimony for those issues stating Mr. Behrendt was there when he in fact was not. The timeline was also corrupt to try to prove their case by changing the dates in that there is a second report stating three different dates and three different years. Of which is a literal impossibility regard the abuse issue. The date of the report where [Father] called in is September 12, 2023 stating as a Childline report the Trial Court it stating it is a second report it is not. They are stating [Father] called in September of 2022 stating it is a second report. The trial court is also stating that January 2023 is the second report as well. This is incorrect. The transcript of the proceeding reflects two different dates that do not apply.

7. The trial court allowed falsification of [a] government document specifically the opinion in support of final order of custody stating that [Father] had reduced custodial time in 2019 when in fact [Father] actually gained custodial time.

Father's Brief at 11-15 (style adjusted) (citations to the record omitted).

Before we discuss these issues, we must note our difficulty understanding Father's Brief due to his failure to abide by the Pennsylvania Rules of Appellate Procedure. It is well-established that the failure to develop an argument may result in waiver of that issue on appeal. *C.H.L. v. W.D.L.*,

214 A.3d 1272, 1276 (Pa. Super. 2019) (citing Pa.R.A.P. 2119(b)). Rule 2119(a) requires the argument section of the brief to be divided into as many parts as there are questions to be argued. Father's argument section is one unbroken paragraph.

We also observe the trial court's inability to comprehend Father's claims. It noted in its Rule 1925(a) opinion that it could not adequately address Father's vague statement of errors. **See** Trial Court Opinion (T.C.O.), 6/5/24, at *3 (not paginated). When a court must guess what issues an appellant is appealing, that is not enough for meaningful review. **C.H.L.**, 214 A.3d at 1278 (finding waiver when the Court could not discern appellant's issues on appeal).

"Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, a person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing." **Commonwealth v. Vurimindi**, 200 A.3d 1031, 1038 (Pa. Super. 2018) (citation omitted). It is not the duty of this Court to act as the appellant's counsel. **C.H.L.**, 214 A.3d at 1277 (citation omitted). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem the issue to be waived." **Id.** at 1277-78 (quoting **Commonwealth v. Cannavo**, 199 A.3d 1282, 1289 (Pa. Super. 2018)).

From what we can discern, nearly all of Father's appellate issues concern either the weight the trial court placed on witness testimony, or relatedly,

- 5 -

whether that testimony was credible. Issue 1: *"Did the trial court abuse its discretion by placing reliance on false testimony witnesses [Mother, Stepfather, and the custody evaluator] without corroborating such testimony…."* This claim involves witness credibility and the weight of the testimony. Issue 2: *"Did the trial court err by not taking into consideration cogent and sufficient evidence produced by [Father]…."* A weight claim. Issue 3: *"Did the trial court erred by making a decision based on the maturity of a 12-year-old when he is in fact 11 years old."* Another weight claim.[2] Issue 4: *"…Allowed biased testimony by with full understanding of [the custody evaluator] Debra Salems…."* Issue 6: *"Did the trial court allow biased testimony from the [Penn Township Detective] Nathaniel Behrendt…."* Both credibility and weight claims.

Father fails to realize that our Court does not re-find facts, re-weigh evidence, or re-assess credibility. **Wilson v. Smyers**, 284 A.3d 509, 520 (Pa. Super. 2022). We are an error-correcting court; it is within the trial court's purview to decide how the evidence should be weighed and whether the witnesses should be believed:

> [W]ith regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we

---

[2] The trial court noted that the son's age was 11. According to Father, this was an error because the son was 12. It is unclear whether Father argues that this error renders the rest of the court's analysis erroneous. We need not resolve that question, however. The trial court explained in its Rule 1925(a) opinion, that it listed the boy's age as 11 because that was how old he was when the court conducted the *in camera* interview.

are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Wilson*, 284 A.3d at 515 (citation omitted).

Given these principles, we conclude none of these issues merits relief. We turn now to Father's remaining two issues. In Issue 5, Father argues that he should have been awarded sole custody based on Mother's contempt of the prior custody order. An award of custody is not a valid punishment for noncompliance with a custody order. *See* 23 Pa.C.S.A. § 5323(g)(1)(i)-(v). Thus, if Father's argument is that he was entitled to custody based solely on the fact that Mother violated the prior order, he is incorrect.

Perhaps Father means to argue that Mother's contempt meant that the first custody factor under Section 5328(a) should have favored him. Under the prior version of 23 Pa.C.S.A. § 5328(a)(1), which was in effect at the time of the parties' hearing, the question was "[w]hich party is more likely to encourage and permit frequent and continuing contact between the child and another party." 23 Pa.C.S.A. § 5328(a)(1) (prior version).[3] This factor was but one of sixteen that the trial court had to consider when fashioning a

_____

[3] The updated version came into effect on August 13, 2024. Now, 23 Pa.C.S.A. § 5328(a)(1) asks "[w]hich party is more likely to ensure the safety of the child." Section 5328(a)(2.3) asks "[w]hich party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child."

custody award. The weighing of the custody factors is within the trial court's discretion. Here, the trial court was satisfied by the testimony of the custody evaluator, who opined that there was no parental alienation on the part of Mother, and that Mother had not coerced the Children into having a negative opinion of Father. Father has not otherwise articulated how the court's determinations under this factor constituted an abuse of discretion. As such, we conclude Father's claim merits no relief.[4]

In Father's final claim – Issue 7 – he argues that the court "allowed the falsification of a government document." The trial court said it could not understand Father's argument, since he did not specify which government document he was referring to. **See** T.C.O. at *3. Upon review, it seems that the document in question was trial court's "Opinion In Support of Final Order of Custody" – that is, the trial court's recitation of its findings on the record. According to Father, the "falsification" occurred when, in its recitation of the parties' procedural history, the court failed to acknowledge that, several years earlier, Father's weekend custody schedule had increased from alternating weekends to every weekend. In our review of the record, it does not appear that the trial court misrepresented the parties' prior custody arrangements.

---

[4] We note that under the updated version of the statute, "[n]o single factor under subsection (a) shall by itself be determinative in the awarding of custody. The court shall examine the totality of the circumstances, giving weighted consideration to the factors that affect the safety of the child, when issuing a custody order that is in the best interest of the child." 23 Pa.C.S.A. § 5328(a.2).

But even if the trial court misspoke, the same is irrelevant to its current custody decision. Father's final claim merits no relief.

Order affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/05/2024